THE PEOPLE *ex rel.* LISA MADIGAN, Attorney General, Plaintiff-Appellant, v. EVA LOVENE LEAVELL, d/b/a L and L Supply Company, Defendant-Appellee.

Fourth District   No. 4—08—0019

Opinion filed February 18, 2009.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Mary E. Welsh (argued), Assistant Attorney General, of counsel), for appellant.

Thomas G. Maag (argued), of Wendler Law, P.C., of Edwardsville, for appellee.

JUSTICE TURNER delivered the opinion of the court:

In September 2007, the State filed a two-count complaint against defendant, Eva Lovene Leavell, doing business as L&L Supply Company, alleging multiple violations of the Illinois Oil and Gas Act (Oil Act) (225 ILCS 725/1 through 28.1 (West 2006)) and seeking injunctive relief, as well as civil penalties. That same month, defendant filed a motion for change of venue or, in the alternative, to transfer on the basis of *forum non conveniens*. In October 2007, the State filed a response, contesting defendant's motion. After a December 2007 hearing, the trial court granted defendant's motion and transferred the case to White County.

In January 2008, the State petitioned this court for leave to appeal pursuant to Supreme Court Rules 306(a)(2) and 306(a)(4) (210 Ill. 2d Rs. 306(a)(2), (a)(4)). We denied the petition, and the State appealed to the supreme court. By supervisory order, the supreme court directed us to grant the State's petition and to hear the appeal on its merits. *People ex rel. Madigan v. Leavell*, 228 Ill. 2d 552, 886 N.E.2d 1027 (2008) (nonprecedential supervisory order on denial of petition for leave to appeal). We have done so and affirm the trial court's judgment.

## I. BACKGROUND

The State's September 2007 complaint set forth the Department of Natural Resources (Department) previously issued defendant permits authorizing her to operate oil production and injection wells in accordance with the terms of the permits. Count I of the complaint specifically asserted defendant violated the Department's orders by failing to repair or plug wells, which the Department later plugged or repaired after the issuance of a final administrative decision. In September 2003, the Department sent defendant a letter demanding reimbursement of the funds it expended in plugging or repairing her wells plus statutory interest. The State listed nine wells for which it still sought reimbursement for work the Department had done. In addition to reimbursement plus interest, the State sought (1) a finding defendant violated the Oil Act by failing to comply with a final administrative decision to plug or repair wells, (2) the imposition of civil penalties, (3) a preliminary injunction for defendant to cease operation under current permits until the Department has been reimbursed, (4) a permanent injunction for defendant to cease and desist from further violations, and (5) costs of the suit.

Count II alleged the Department issued a final administrative decision in April 2002, finding defendant's wells to be abandoned for nonpayment of fees. Defendant had yet to plug the abandoned wells that were the subject of the April 2002 decision. The State again sought (1) a violation finding, (2) civil penalties, and (3) preliminary and permanent injunctions.

In its complaint, the State also indicated venue was appropriate in Sangamon County based on the Department's issuance of final administrative decisions to defendant there.

In her September 2007 venue motion, defendant asserted the subject of the State's current suit had been the subject of five or more cases filed in White County, Illinois. Defendant also noted (1) she did not reside in Sangamon County and (2) none of the wells that were the subject of the lawsuit were on property located in Sangamon

County. Further, defendant resided and did business in White County, and the wells and witnesses were located in White County or near it. As to venue, defendant contended Sangamon County was not a proper venue under either prong of the venue statute contained in section 2—101 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2—101 (West 2006)). With respect to *forum non conveniens*, defendant addressed both private and public interests. As to private interests, defendant noted that, to view the premises at issue, a trip between 160 and 205 miles from Springfield to White or Crawford County would be required, but it would be a short drive from White County. Defendant also reiterated the facts that she, the likely witnesses, and the wells at issue were located in or near White County. Regarding public interests, defendant noted Sangamon County circuit court was "much more congested" than the White County circuit court. Defendant also contended the people of White County had "much more interest" in this case than the people of Sangamon County.

Defendant attached to her motion maps showing the distance between Springfield and Carmi, Illinois (203.65 miles), and Springfield and Robinson, Illinois (163.49 miles). She also presented the 2005 annual report of the Illinois courts, showing the caseloads of the various circuits in Illinois. Defendant further submitted affidavits by her and her son, Stanley Leavell, in support of her following contentions: (1) Sangamon County was not near her residence, her place of business, her witnesses, and the property at issue and (2) a trial in Sangamon County would be inconvenient.

The State responded Sangamon County was a proper place of venue under section 11 of the Oil Act (225 ILCS 725/11 (West 2006)) since the Department issued final administrative decisions against defendant in Sangamon County. It contended the specific venue statute contained in the Oil Act was controlling over the general venue statute contained in the Procedure Code.

As to *forum non conveniens*, the State asserted the plaintiff's choice of forum should be given deference and noted the Department was located in Sangamon County. It also asked the circuit court to take notice of the fact the Department brought all of its oil-and-gas cases in Sangamon County and cited two recent cases. The State also contended defendant failed to prove the private- and public-interest factors strongly favor transfer. According to the State, the relative ease of access to sources of proof favored Sangamon County because the nature of proof was documentary rather than testimonial and a view of the premises would not be appropriate in this action. Moreover, the State urged the congestion of court dockets should be afforded minimal weight.

At the December 2007 hearing, the parties neither presented evidence nor asked the trial court to take judicial notice of anything. After hearing the parties' arguments, the court granted the motion, stating "[t]here is absolutely no reason that I see that this matter should be in Springfield." The court then transferred the matter to "Dwight [sic] County, along with the rest of the cases involving these two parties."

## II. ANALYSIS

### A. Motion Taken With the Case

■ In August 2008, defendant filed a motion to strike pages 4 through 65 of the appendix to the State's brief. Defendant asserts those pages were not presented to the circuit court and thus she never had an opportunity to submit exhibits and documents in opposition. The contested pages include the following: (1) Department administrative decisions and violation notices regarding the wells at issue, (2) docket sheets for circuit court cases in White County, (3) a map showing the drive between Carmi and Robinson, (4) an excerpt from the 2006 annual report of the Illinois courts, and (5) a table of contents for the supporting record on appeal. In the alternative, defendant seeks leave to submit new evidence of her own.

The State responds, asserting this court (1) should deem the appendix materials a supplement to the record under Supreme Court Rule 366 (155 Ill. 2d R. 366(a)(3)) or (2) take judicial notice of them (see *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177-78, 797 N.E.2d 687, 696-97 (2003) (mileage between two locations); *IFC Credit Corp. v. Rieker Shoe Corp.*, 378 Ill. App. 3d 77, 81, 881 N.E.2d 382, 386 (2007) (documents in the public records of other courts); *Hermesdorf v. Wu*, 372 Ill. App. 3d 842, 850, 867 N.E.2d 34, 41 (2007) (written decisions contained in the record of an administrative tribunal)). The State notes the documents are offered as background information and are not directed at the merits of its arguments. However, in its brief, the State does cite to some of the materials in its argument section.

While this court may take judicial notice of some of the items contained in the State's appendix, we decline to do so. Contrary to the State's assertion the material is simply background information, the material is evidence in support of its position that the State failed to bring to the trial court's attention. That fact is demonstrated by the State's occasional citation to the material in the argument section of its brief. The State should have presented this evidence to the trial court in opposition to defendant's motion. We decline to allow the State to relitigate the matter on appeal. Thus, we strike pages 4 through 65 of the State's appendix, except for page 54, which contains

the table of contents for the supporting record. That page was required by Supreme Court Rule 342(a) (210 Ill. 2d R. 342(a)). Accordingly, defendant's motion to strike is granted in part and denied in part.

## B. Venue

The State first argues Sangamon County was a proper venue for its enforcement action against defendant. Where the facts are undisputed surrounding the matter of venue, the issue becomes one of law, which we review *de novo. Boxdorfer v. DaimlerChrysler Corp.*, 339 Ill. App. 3d 335, 339, 790 N.E.2d 391, 394 (2003). Moreover, the venue question in this case involves statutory construction, which we also review *de novo. O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440, 892 N.E.2d 994, 1007 (2008).

■■ Section 2—101 of the Procedure Code (735 ILCS 5/2—101 (West 2006)) contains a venue provision that provides, in pertinent part, the following:

> "Except as otherwise provided in this [a]ct, every action must be commenced (1) in the county of residence of any defendant *** or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose."

While the drafting of the Procedure Code brought together many separate venue provisions, "not all statutory provisions governing venue were incorporated into the [Procedure] Code." 1 Nichols Illinois Civil Practice §9:4, at 356 (rev. 2001). The Oil Act is one of the acts that contains its own venue provision. Section 11 of the Oil Act (225 ILCS 725/11 (West 2006)) provides, in pertinent part, the following:

> "[T]he Department, through the Attorney General, *** shall bring an action in the name of the People of the State of Illinois against such person in the circuit court of the county wherein any part of the land or any activity which is the subject matter of such action is located, or a final administrative order was entered, to restrain such person from continuing such violation or from carrying out the threat of violation."

Defendant agrees with the State that certain administrative orders were issued in Sangamon County and acknowledges Sangamon County is a proper venue under section 11. However, she contends the two venue provisions must be applied together, leaving White County as the only county that satisfies both venue provisions. In the alternative, defendant contends section 2—101 of the Procedure Code is the only applicable venue provision.

The cardinal rule of statutory construction requires courts to ascertain and give effect to the legislature's intent. The statutory language, given its plain and ordinary meaning, best indicates the legislature's intent. *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332,

898 N.E.2d 631, 636 (2008). Thus, when the statutory language is clear and unambiguous, a court must give effect to the statute's plain meaning. *People v. Benton*, 322 Ill. App. 3d 958, 960, 751 N.E.2d 1257, 1260 (2001). Further, courts consider statutes that relate to the same subject to be *in pari materia* and construe them together. *Benton*, 322 Ill. App. 3d at 961, 751 N.E.2d at 1260. "Moreover, a court will avoid an interpretation of a statute that would render any portion of it meaningless or void." *McNamee v. Federated Equipment & Supply Co.*, 181 Ill. 2d 415, 423, 692 N.E.2d 1157, 1161 (1998).

■ Defendant contends the statutes can be read in harmony since one county, White County, would be an acceptable venue under both statutes. However, assuming *arguendo* Sangamon County is an improper venue under the general venue provision, defendant's interpretation renders the "final administrative order" language meaningless. Conflicting statutes will be construed together "if such an interpretation is reasonable." *Abruzzo*, 231 Ill. 2d at 332, 898 N.E.2d at 636. Here, defendant's suggested interpretation is not reasonable as it renders a part of section 11 of the Oil Act (225 ILCS 725/11 (West 2006)) meaningless.

Illinois courts in other cases have addressed similar situations in which a specific venue provision is at odds with the general venue provision of section 2—101 of the Procedure Code (735 ILCS 5/2—101 (West 2006)). In *Foley v. Greer*, 333 Ill. App. 3d 500, 503, 775 N.E.2d 665, 668 (2002), the Fifth District addressed the venue provision of the Uniform Arbitration Act (710 ILCS 5/17 (West 1998)), which required court actions to be filed in the county where a previous arbitration hearing was held. Citing the Third District's holding in *Mazur v. Quarters Designs, Inc.*, 248 Ill. App. 3d 873, 875, 619 N.E.2d 763, 764 (1993), the *Foley* court concluded the specific venue statute of the Uniform Arbitration Act was the applicable venue provision. *Foley*, 333 Ill. App. 3d at 503, 775 N.E.2d at 668. The *Mazur* court, which also addressed the Uniform Arbitration Act's venue provision, based its holding on the statutory-construction rule that, where two statutes relate to the same subject, the particular statute prevails over the general one. *Mazur*, 248 Ill. App. 3d at 875, 619 N.E.2d at 764, citing *People ex rel. Myers v. Pennsylvania R.R. Co.*, 19 Ill. 2d 122, 129, 166 N.E.2d 86, 90 (1960).

Defendant contends *Foley* is distinguishable because the Uniform Arbitration Act provides for only one county to be a proper venue and thus is a local action. On the other hand, the "final administrative order" language provides for a transitory action. We disagree with defendant's distinction. It is still a fundamental rule of statutory construction that, when a general statutory provision and a specific

statutory provision, either in the same or in another act, relate to the same subject and are in conflict, " 'the specific provision controls and should be applied.' " *Mattis v. State Universities Retirement System*, 212 Ill. 2d 58, 77, 816 N.E.2d 303, 313 (2004), quoting *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459, 781 N.E.2d 261, 267 (2002). The distinction alleged by defendant has no effect on the aforementioned rule. Moreover, if an arbitration hearing has not been held, the Uniform Arbitration Act's venue provision permits an action to be brought in other counties based on the defendant's residence or place of business, and if the defendant residence and business are outside Illinois, then the action can be brought in any Illinois county. 710 ILCS 5/17 (West 2006). Thus, venue under Uniform Arbitration Act is not always limited to one county.

Citing *People v. One Residence Located at 1403 East Parham Street*, 251 Ill. App. 3d 198, 202-03, 621 N.E.2d 1026, 1030 (1993), defendant also asserts the general venue provision should control in this situation because it was the statute that was last amended. We again disagree. The general venue provision was the last amended provision with regard to the specific venue provision of the Uniform Arbitration Act as well, since that provision has not been amended since its creation in 1961 (1961 Ill. Laws 3844, 3848-49 (§17) (effective August 24, 1961)). Moreover, as stated earlier, the drafting of the Procedure Code incorporated many separate venue provisions, but not all of them. 1 Nichols Illinois Civil Practice §9:4, at 356 (rev. 2001). Thus, an implicit repeal of the specific venue provision is inconsistent with the formation of the Procedure Code.

Accordingly, we find the specific venue provision of section 11 of the Oil Act (225 ILCS 725/11 (West 2006)) is the applicable venue provision in this matter, and thus Sangamon County is a proper venue.

## C. Constitutionality of Section 11 of the Oil Act

Defendant also asserts that, if venue in Sangamon County is proper, then section 11 of the Oil Act is unconstitutional under article I, section 8, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §8) and the sixth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VI, XIV). The State asserts defendant has forfeited this argument because she failed to raise it in the trial court.

Our review of the record shows defendant did not present this constitutional argument to the trial court. A party may not raise constitutional issues for the first time on appeal, and a reviewing court will deem such issues forfeited. *Alarm Detection Systems, Inc. v. Village of Hinsdale*, 326 Ill. App. 3d 372, 385, 761 N.E.2d 782, 794

(2001). Moreover, our supreme court has declared that " 'cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort.' " *People v. Hampton*, 225 Ill. 2d 238, 243, 867 N.E.2d 957, 960 (2007), quoting *In re E.H.*, 224 Ill. 2d 172, 178, 863 N.E.2d 231, 234 (2006). Accordingly, we decline to address this issue.

## D. *Forum Non Conveniens*

■ The State also argues the trial court erred by finding the case's transfer to White County was warranted based on *forum non conveniens*. The State initially raises the legal questions of whether (1) White County is a proper venue under section 11 of the Oil Act for its enforcement action and (2) the doctrine of *forum non conveniens* applies to this action. If the aforementioned questions are answered in the affirmative, then the State contends the court abused its discretion by finding that, under *forum non conveniens* doctrine, the facts warranted a transfer to White County.

Defendant asserts the State has forfeited its legal contentions by failing to raise them in the trial court. However, "forfeiture acts as a limitation on the parties, not the courts." *Doe A. v. Diocese of Dallas*, 379 Ill. App. 3d 782, 792, 885 N.E.2d 376, 384 (2008). Accordingly, we will address the State's legal contentions because they are important in determining whether a transfer to White County based on *forum non conveniens* was proper.

### 1. *White County*

The State asserts White County is not a proper venue under section 11 of the Oil Act (225 ILCS 725/11 (West 2006)) because not all of the wells are located in White County. This contention also raises an issue of statutory construction, and thus our review is *de novo*. *O'Casek*, 229 Ill. 2d at 440, 892 N.E.2d at 1007.

Besides the county where a final administrative order was entered, section 11 of the Oil Act (225 ILCS 725/11 (West 2006)) also provides for venue in the county "wherein any part of the land or any activity which is the subject matter of such action is located." Here, the parties agree some of the wells, but not all of them, are located in White County. Thus, part of the land at issue is located in White County, and the repair or plugging of some of the wells also occurred in White County. The fact some other wells and other activity took place in other counties does not defeat venue in White County. The plain language of the statute states "any activity" and "any part of the land." 225 ILCS 725/11 (West 2006). Since part of the land and some activity took place in White County, that county is a proper place of venue for this entire action under section 11 of the Oil Act. To hold

otherwise would allow the State to lump numerous violations related to land and/or activity in different counties together to avoid the "land" and "activity" provision of the venue statute. Such a construction would defeat the statute's plain language.

## 2. *Applicability*

The State contends the doctrine of *forum non conveniens* does not apply to this enforcement action. Whether the doctrine applies is a question of law that we review *de novo*. See *Community Merchant Services, Inc. v. Jonas*, 354 Ill. App. 3d 1077, 1083, 822 N.E.2d 515, 521 (2004).

The *forum non conveniens* doctrine is rooted in "fundamental fairness and sensible and effective judicial administration." *Continental Casualty Co. v. Michigan Mutual Insurance Co.*, 183 Ill. App. 3d 778, 781, 539 N.E.2d 431, 433 (1989). The doctrine presupposes the existence of two forums under which jurisdiction is proper. *Continental*, 183 Ill. App. 3d at 781, 539 N.E.2d at 433. In this case, at least two counties are proper places of venue. Thus, the doctrine's applicability is not defeated by the existence of only one proper forum.

Moreover, we disagree with the State that a venue statute must be a general one for the doctrine to apply. We acknowledge the United States Supreme Court's *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 91 L. Ed. 1055, 1062, 67 S. Ct. 839, 842 (1947), in which it stated: "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a *general* venue statute." (Emphasis added.) However, the Supreme Court later addressed the specific venue provision of the Federal Employers' Liability Act (45 U.S.C. §56 (2000)) and held states were free to decide the availability of the *forum non conveniens* doctrine in suits under that act according to the state's own local law. *Missouri ex rel. Southern Ry. Co. v. Mayfield*, 340 U.S. 1, 5, 95 L. Ed. 3, 8, 71 S. Ct. 1, 3 (1950). Thus, the fact the states were to decide the applicability of *forum non conveniens* to a specific venue statute indicates the Supreme Court did not limit the doctrine's applicability to general venue provisions.

Last, we note this court's decision in *Midland Coal Co. v. Knox County*, 268 Ill. App. 3d 485, 487, 644 N.E.2d 796, 797 (1994), is distinguishable from this case. There, we addressed the Administrative Review Law (735 ILCS 5/3—101 through 3—112 (West 1992)). *Midland Coal*, 268 Ill. App. 3d at 487, 644 N.E.2d at 797. The venue provision of the Administrative Review Law expressly stated the *forum non conveniens* doctrine was inapplicable to actions brought under the act. See 735 ILCS 5/3—104 (West 1992) ("The court first acquiring

jurisdiction of any action to review a final administrative decision shall have and retain jurisdiction of the action until final disposition of the action"). We note that statute still expressly provides for the inapplicability of the doctrine. See 735 ILCS 5/3—104 (West 2006).

Accordingly, the *forum non conveniens* doctrine is applicable to the suit at issue in this appeal.

### 3. *Merits*

Last, the State contends the trial court erred by transferring the suit to White County based on *forum non conveniens*.

In ruling on a *forum non conveniens* motion, a trial court possesses considerable discretion. *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441, 848 N.E.2d 927, 934 (2006). Thus, a reviewing court will only reverse the trial court's decision if the appellant demonstrates the trial court abused its discretion in balancing the relevant factors. A trial court abuses its discretion only when no reasonable person would take the view it adopted. *Langenhorst*, 219 Ill. 2d at 442, 848 N.E.2d at 934. A trial court also abuses its discretion in transferring a case under the doctrine when "the potential trial witnesses are scattered among several counties, including the plaintiff's chosen forum, and no single county enjoys a predominant connection to the litigation." *First American Bank v. Guerine*, 198 Ill. 2d 511, 526, 764 N.E.2d 54, 64 (2002).

Our supreme court has indicated the discretionary power provided by the *forum non conveniens* doctrine "should be exercised only in exceptional circumstances when the interests of justice require a trial in a more convenient forum." (Emphasis omitted.) *Langenhorst*, 219 Ill. 2d at 442, 848 N.E.2d at 934. " 'In most instances, the plaintiff's initial choice of forum will prevail, provided venue is proper and the inconvenience factors attached to such forum do not greatly outweigh the plaintiff's substantial right to try the case in the chosen forum.' " *Guerine*, 198 Ill. 2d at 520, 764 N.E.2d at 60, quoting *Peile v. Skelgas, Inc.*, 163 Ill. 2d 323, 335-36, 645 N.E.2d 184, 190 (1994). While the aforementioned standard is a difficult one for defendants to meet, legitimate transfers are permitted where the balance of relevant factors strongly favors litigation in another forum. *Langenhorst*, 219 Ill. 2d at 443, 848 N.E.2d at 935.

The relevant factors to be considered in applying the *forum non conveniens* doctrine are divided into private- and public-interest factors. *Langenhorst*, 219 Ill. 2d at 443, 848 N.E.2d at 935. Private-interest factors include (1) the parties' convenience; (2) the relative ease of access to testimonial, documentary, and real-evidence sources; and (3) all other practical problems that make trial of a case easy,

expeditious, and inexpensive. *Langenhorst*, 219 Ill. 2d at 443, 848 N.E.2d at 935. The following are the public-interest factors:

"(1) the interest in deciding controversies locally[,] (2) the unfairness of imposing trial expense and the burden of jury duty on residents of a forum that has little connection to the litigation[,] and (3) the administrative difficulties presented by adding litigation to already congested court dockets." *Langenhorst*, 219 Ill. 2d at 443-44, 848 N.E.2d at 935.

A court is to neither weigh the private-interest factors against the public-interest factors nor emphasize any one factor; rather, it must consider all relevant factors and evaluate the total circumstances in determining whether the defendant has proven the balance of factors strongly favors transfer. *Langenhorst*, 219 Ill. 2d at 443-44, 848 N.E.2d at 935. Additionally, we note "[e]ach *forum non conveniens* case must be considered as unique on its facts." *Langenhorst*, 219 Ill. 2d at 443, 848 N.E.2d at 935.

As to the private-interest factors, defendant submitted affidavits by her and her son, Stanley, and maps showing the distance between Carmi and Robinson (the county seats of White and Crawford Counties, respectively) and Springfield. That information indicated (1) defendant and Stanley reside in Carmi; (2) she and Stanley would testify at trial; (3) a trial in Sangamon County would be "extremely inconvenient" for both of them, as it is 203.65 miles from Carmi; (4) a trial in White County would be convenient for both of them; (5) several of the wells at issue are located in White County; (6) the wells not located in White County are located in counties near or adjoining White County; (7) none of the wells are located in Sangamon County; and (8) she and Stanley have absolutely no connection to Sangamon County.

Defendant contends the only connection to Sangamon County is that the attorney for the State's office and the Department's main office are located there. The State alleges the nature of proof is documentary rather than testimonial and thus the sources of proof favor Sangamon County since the documents are located there. It further argues a view of the wells and the availability of witnesses are not important in this case.

Based on the aforementioned facts, the parties' convenience and the ease of access to evidentiary sources favor White County. Some of the wells at issue are located there, and it is near the counties where the other wells are located. It is also defendant's residence and the residence of the only other witness mentioned at the trial-court level. Moreover, White County is a significant distance from Sangamon County, making Sangamon County an inconvenient location for the

only noted witnesses and any site views. Additionally, while the State contends the evidence in this case is only documentary (which is questionable based on its appellate argument the Department's employees are located in Sangamon County), defendant contends both the viewing of the wells and witnesses are necessary to her defense. Clearly, documentary evidence is easier to transport and make available at trial than witnesses and site views. Last, we note the third factor really does not come into play in this case as all of the practical problems appear to be addressed by the first two factors.

Regarding the public-interest factors, we initially note our earlier rejection of the State's argument the Oil Act prohibits it from filing a single enforcement action in one of the various counties where the pieces of land at issue are located. Thus, a lawsuit in White County does not require multiple actions in other counties.

The local-interest factor substantially favors White County. Defendant set forth in her affidavit that the wells at issue are located in White County or a nearby county and she and her witness reside there as well. Defendant also conducted her business in White County. Accordingly, White County has a significant interest in the Department's actions affecting wells in its county as well as one of its citizens and a business located there. Moreover, we disagree with the State that White County has no interest at all in the decisions regarding the wells in other counties. Defendant, the owner of the wells, and her business are located in White County. Sangamon County has little interest in this action involving a nonresident and property not located there.

Regardless of whether defendant is entitled to a jury trial, one of the counties at issue must bear the trial expense of this action. As stated in the previous section, Sangamon County has no specific interest in this litigation outside the facts a final administrative decision was entered there and the legislature permits venue there based on that decision. White County has a substantial interest in this litigation. Thus, when compared to White County's significant interest in this matter, it is unfair to impose the trial-related expenses of this litigation on the residents of Sangamon County. The State also attempts to downplay this factor by asserting the trial burden in this case is not great. However, the State recognizes some of the issues are contested, and defendant indicates her desire to contest the State's allegations. In any event, a burden would still exist on Sangamon County, which has little connection to and little interest in the litigation. Additionally, we note the State cites no authority for its contention Sangamon County courts' familiarity with these types of cases makes placing the expense burden on Sangamon County residents fair.

As to the congestion of the courts, defendant presented evidence that Sangamon County had a total of 74,018 and 71,650 new cases in 2005 and 2006, respectively. Defendant's evidence also indicates that in 2005, the entire Seventh Circuit, in which Sangamon County is located, received 103,026 new cases, disposed of 106,274 cases, and had 37,633 pending civil cases. That same year, the entire Second Circuit, in which White County is located, received 55,062 new cases, disposed of 51,565 cases, and had 9,518 pending cases. Thus, while the Seventh Circuit had a better rate of disposing cases in 2005 than the Second Circuit, the pending number of civil cases for the two circuits indicates the Seventh Circuit is the more congested docket. Additionally, we note that, in analyzing *forum non conveniens* issues, "the trial court is in the better position to assess the burdens on its own docket." *Langenhorst*, 219 Ill. 2d at 451, 848 N.E.2d at 939.

Here, the evidence presented in the trial court indicates the witnesses were not scattered over several counties and White County had a predominant connection to the action. Moreover, all of the relevant factors favor White County as opposed to Sangamon County. Some factors such as the local interest in the litigation, substantially favor White County. Thus, we find a reasonable person considering the totality of the circumstances and all of the relevant factors could have found the inconvenience of Sangamon County greatly outweighed the State's venue choice and a transfer to White County was strongly favored. Accordingly, we conclude the trial court did not abuse its discretion by transferring this case to White County under the doctrine of *forum non conveniens*.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH, P.J., and KNECHT, J., concur.