Filed: 12-21-09     NOS.  4-08-0651, 4-08-0652, 4-09-0214 cons.
Modified: 2-22-10

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v.  (No. 4-08-0651) | ) | Livingston County |
| CASEY L. HAMMOND, | ) | No. 06CF50 |
|     Defendant-Appellee. | ) | |

THE PEOPLE OF THE STATE OF ILLINOIS,          )     No. 05CF289
    Plaintiff-Appellant,                                   )
    v.  (No. 4-08-0652)                                   )
CHRISTOPHER L. GAITHER,                               )
    Defendant-Appellee.                                  )

THE PEOPLE OF THE STATE OF ILLINOIS,          )     No. 07CF134
    Plaintiff-Appellant,                                   )
    v.  (No. 4-09-0214)                                   )     Honorable
KELLY A. DONAHUE,                                         )     Jennifer H. Bauknecht,
    Defendant-Appellee.                                  )     Judge Presiding.

JUSTICE APPLETON delivered the opinion of the court:

In three cases, People v. Hammond, No. 06-CF-50 (Cir. Ct. Livingston Co.); People v. Gaither, No. 05-CF-289 (Cir. Ct. Livingston Co.); and People v. Donahue, No. 07-CF-134 (Cir. Ct. Livingston County), the State petitioned for the revocation of probation.  Defendants, Casey L. Hammond, Christopher L. Gaither, and Kelly A. Donahue, moved for dismissal of the petitions on the authority of section 5-6-4(i) of the Unified Code of Corrections (Code) (730 ILCS 5/5-6-4(i) (West 2008)), which establishes the alternative of intermediate sanctions as a way of avoiding a potential revocation of probation for technical, or nonfelonious, violations of the conditions of probation.  The trial court granted the motions because defendants had accepted and

completed the sanctions their probation officers had proposed. The State appeals in all three cases, and we have consolidated the appeals because they present the same question: whether section 5-6-4(i) violates the doctrine of separation of powers (Ill. Const. 1970, art. II, §1) by unduly infringing on the executive branch or, more specifically, the State's Attorneys in their function of prosecuting violations of probation. We conclude, in our de novo review, that the State has failed to rebut the strong presumption that section 5-6-4(i) is constitutional. See Maddux v. Blagojevich, 233 Ill. 2d 508, 528, 911 N.E.2d 979, 991 (2009). Therefore, we affirm the trial court's judgment in the three cases.

## I. BACKGROUND

### A. People v. Hammond

On May 24, 2006, Hammond entered an open plea of guilty to four counts: unlawful possession of a controlled substance (less than 15 grams of a substance containing heroin) (720 ILCS 570/402(c) (West 2006)), unlawful possession of a hypodermic syringe (720 ILCS 635/1 (West 2006)), unlawful possession of cannabis (720 ILCS 550/4(a) (West 2006)), and unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2006)). The police discovered these violations after Hammond was taken to the hospital on February 27, 2006, for a heroin overdose.

On July 12, 2006, the trial court sentenced Hammond to probation for two years. The probation was subject to his compliance with a list of conditions. For example, he had to serve 180 days in jail (with credit for the 66 days he had already served). He had to pay restitution, fines, and fees (minus incarceration credit). He had to refrain from violating any criminal statute.

On May 12, 2008, the State filed a petition to revoke probation. The petition alleged that on or about March 1, 2008, Hammond used marijuana and thereby violated a criminal statute.

On July 8, 2008, Hammond filed a motion to dismiss the State's petition to revoke his probation. He alleged that before the State filed its petition, the probation office offered him an "[a]dministrative [s]anction *** in lieu of a [p]etition to [r]evoke [p]robation being filed"; he had accepted the sanction and completed all its requirements; and, therefore, section 5-6-4(i) of the Code (730 ILCS 5/5-6-4(i) (West 2008)) required the dismissal of the State's petition.

On July 9, 2008, the State filed a memorandum opposing the motion for dismissal. The State did not dispute the factual basis of the motion, i.e., that before the filing of the petition to revoke probation, Hammond accepted and complied with intermediate sanctions. Instead, the State raised a constitutional objection. The State argued that interpreting section 5-6-4(i) as requiring dismissal of the State's petition for revocation of probation in any case in which the probation office had offered intermediate sanctions and the defendant had accepted them and complied with them would abrogate the authority of the State's Attorney to prosecute violations of probation and thus would violate the doctrine of separation of powers (Ill. Const. 1970, art. II, §1).

On July 10, 2008, the trial court held a hearing on Hammond's motion for dismissal. Judge Frobish asked the assistant State's Attorney, Corey J. Luckman, if he was challenging the constitutionality of section 5-6-4(i). Luckman answered that if section 5-6-4(i) meant what defense counsel said it meant--i.e., that "the administrative sanction process [was] exclusive"--then a "constitutional issue" did arise.

Judge Frobish remarked that this case presented "a unique factual situation. With the Hammond family, one boy [was] dead. Another son," namely, the defendant, "use[d] drugs and continue[d] to use drugs. Whatever [was] going on at home, support structure, whatever, [was] clearly insufficient to prevent the use of drugs." Judge Frobish believed that in such a case, when the defendant's very life was at stake, the State's Attorney should have been able to prosecute his petition for revocation and the legislature had "gone too far" with its concept of intermediate sanctions. As Judge Frobish put it, "[t]he State's Attorney should not be hamstrung in [his] efforts to prevent people from dying." Judge Frobish believed that section 5-6-4(i) was unconstitutional; nevertheless, he did not actually rule on Hammond's motion for dismissal. Instead, he continued the hearing so that Luckman could give notice to the Attorney General that the State was challenging the constitutionality of section 5-6-4(i). See 210 Ill. 2d R. 19(a).

On August 14, 2008, the hearing on Hammond's motion for dismissal resumed. This time, a different judge was presiding, Judge Bauknecht. Luckman reiterated his constitutional argument. He said: "[W]hen one invokes this concept of exclusivity"--i.e., the exclusive power of the probation office to determine, through the offering or nonoffering of intermediate sanctions, whether a nonfelonious violation of probation will result in a possible revocation of probation (see 730 ILCS 5/5-6-4(i) (West 2008))--"[y]ou literally have to take both constitutional and statutory authority out of the hands of the State's Attorney ***, and therein lies the separation[-]of[-]powers problem."

Judge Bauknecht granted Hammond's motion to dismiss the State's

- 4 -

petition for revocation of probation. She said: "[T]he basis for my decision would be *** the statute; and I guess I'll leave it to the [a]ppellate [c]ourt to determine whether it's constitutional. I'm not prepared to declare that today."

### B. People v. Gaither

On March 6, 2006, Gaither entered an open plea of guilty to two counts of unlawful delivery of a controlled substance (more than 1 gram but less than 15 grams of a substance containing cocaine) (720 ILCS 570/401(c)(2) (West 2006)).

On May 2, 2006, the trial court sentenced him to probation for 3 years, subject to his fulfilling several conditions, including serving 180 days in jail (with credit for 1 day), not using or possessing any alcoholic beverage or entering any place where the sale of alcohol was the principal business, not violating any criminal statute, and submitting to a breath test whenever his probation officer requested him to do so.

On May 14, 2007, Gaither's probation officer, Erik S. Mund, filed a report of violation. According to the report, on May 11, 2007, Gaither entered an establishment called "Exit 197," where the sale of alcohol was the principal business. The police saw him there, and when they approached him, he ran. They caught him and arrested him for obstructing a peace officer. A breath test revealed he had a blood alcohol concentration of 0.134. On behalf of the probation office, Mund requested the State's Attorney to file a petition for the revocation of Gaither's probation. The State's Attorney did so on May 23, 2007.

On June 29, 2007, the trial court arraigned Gaither on the petition for revocation. The court inquired whether Gaither was eligible for "administrative sanction." Mund answered he had already filed a report of violation and the State had

already decided to petition for the revocation of probation. Luckman explained to the court that Gaither would have been eligible for an administrative sanction but before the probation office offered him one, the State filed its petition for revocation of probation-- indeed, it was at the behest of the probation office that the State did so. Mund observed that this was Gaither's first violation of probation.

In a status hearing on September 20, 2007, defense counsel requested that "this matter be handled by administrative sanction" pursuant to section 5-6-1(a) of the Code (730 ILCS 5/5-6-1(a) (West 2006)). Luckman argued that the system of administrative sanctions was unconstitutional because it "[took] away from the prosecuting authority the authority to initiate the action."

Judge Bauknecht told the probation officer: "Mr. Mund, you are directed to offer an administrative sanction to Mr. Gaither following this hearing today ***." The court gave Gaither permission to file a motion to dismiss the petition for revocation of probation. In the hearing on that motion, the court would address the constitutionality of the legislation creating the administrative sanction.

On November 21, 2007, Gaither filed a motion to dismiss the State's petition to revoke his probation. The ground of the motion was his compliance with intermediate sanctions. He alleged that after the State filed its petition, the probation department offered him an administrative sanction. He had accepted the sanction and done everything the sanction required. He argued that section 5-6-4(i) (730 ILCS 5/5-6-4(i) (West 2006)) mandated the dismissal of the State's petition.

On March 13, 2008, in the hearing on Gaither's motion for dismissal, Luckman argued that construing section 5-6-4(i) so as to make the State's petition for

revocation of probation subject to dismissal on the basis of defendant's completion of intermediate sanctions would make the statute unconstitutional. He argued that, correctly interpreted, the statute allowed the State's Attorney, upon receiving notice of intermediate sanctions, to acquiesce to the sanctions or, alternatively, to "veto" them by filing a petition for revocation of probation. Any other interpretation, he argued, would take away the State's Attorney's constitutional discretion and authority as a prosecutor.

Judge Bauknecht responded:

"THE COURT: But the statute would have no meaning. It would all boil down to the State[,] then.

MR. LUCKMAN: In the end[,] it does.

THE COURT: That's what you are suggesting?

MR. LUCKMAN: That's the constitution. The State's Attorney. That's where the real discretion lies. It creates an avenue that the prosecut—

THE COURT: The State has to be willing to exercise the discretion it's given, and the State does not exercise discretion. We do this, that, and this. But I don't see too much discretion going on.

We're going to take this up on appeal because this person over 21 years of age has been successfully on a term of probation for a term of [2] years and he does the stupidest thing ever and goes into a bar. He violated his probation

- 7 -

order. He violated his probation order. He should be sanctioned. He was sanctioned.

That's the whole--[t]o me, this case is exactly why we have administrative sanctions[,] because I have now spent how many hearings because he was stupid enough to go into a bar when he was told by the [c]ourt not to be into a bar[,] when he violated no other law. He wasn't accused of any other crimes. It's a technical violation that has taken my time, your time, Mr. Smith's time, and probation's time[-- and] for what?

MR. LUCKMAN: Because--

THE COURT: Because the State wants to do it that way."

Judge Bauknecht granted Gaither's motion to dismiss the State's petition to revoke his probation.

## C. People v. Donahue

On July 30, 2007, Donahue entered a negotiated plea of guilty to unlawful use of a credit card number (720 ILCS 250/12 (West 2006)), and the trial court sentenced her to probation for 30 months. The probation was subject to the following conditions, among others: (1) she was not to violate any criminal statute; (2) she was to report to, and appear in person before, a probation officer or the court as often as directed; (3) she was to abstain from illegal drugs; (4) she was not to leave the state

without the consent of the probation officer or the court; and (5) she was subject to the "Administrative Sanctions Program."

On August 7, 2008, the State filed an amended petition to revoke Donahue's probation. The amended petition alleged she had left the state without permission, she had admitted smoking cocaine in May 2008 and marijuana in July 2008, and she had failed to report to her probation officer in May and June 2008. The State had learned of these violations from minutes of the probation department's staff meeting of July 10, 2008. According to the minutes, the probation department chose to handle the violations through "administrative sanctions."

On November 17, 2008, Donahue filed a motion to dismiss the amended petition for revocation of probation. She pleaded that before the State filed its petition, the probation department offered her "an administrative sanction *** in lieu of a [p]etition to [r]evoke." She had accepted the sanction and fulfilled its requirements. Therefore, she concluded, section 5-6-4(i) mandated the dismissal of the amended petition to revoke her probation.

On December 8, 2008, the trial court held a hearing on Donahue's motion for dismissal. Luckman argued that "notice [of intermediate sanctions] after the fact [was] a pretty useless thing if the State's Attorney [was to have] any function and a role." He read the statute as "intend[ing] a notice in time to say[,] ['N]o, we're filing a petition[']; not a notice after [it was] a <u>fait</u> <u>accompli</u>." He reasserted the constitutional argument he had made in the other cases.

The trial court stated:

"It's nice to know that the [S]tate's [A]ttorney's office has so much time to deal with somebody moving and then coming back and not reporting and then reporting when we've got other matters to be dealing with ***.

*** [T]he motion to dismiss is granted. This [c]ourt believes that the statute provides that this [c]ourt cannot revoke probation upon the successful completion of a sanction. And clearly Miss Donahue has successfully completed the sanction.

There was no report of probation filed requesting that a petition to revoke be filed. This is set forth in the statute very clearly. There is nothing in the statute that requires the notice of sanctions be filed before, during[,] or after the sanction. So I believe that the method with which the [c]ourt [s]ervices [d]epartment is notifying the State's Attorney's office at this time is compliant with the statute, and so I do not think that the [c]ourt has authority pursuant to the statute to revoke probation upon the successful completion of the sanction."

## II. ANALYSIS

### A. Hammond's Case

#### 1. The Correct Interpretation of Section 5-6-4(i)

The State contends that the trial court's interpretation of section 5-6-4(i)

of the Code (730 ILCS 5/5-6-4(i) (West 2008)) puts the statute at odds with the doctrine of separation of powers by transferring the State's Attorney's prosecutorial discretion to the probation department. According to the State, to reach the conclusion that section 5-6-4(i) required the dismissal of the petition to revoke Hammond's probation, the court had to read the statute as (1) granting the probation department the power, through the offering of intermediate sanctions, to prevent the State's Attorney from filing a petition for revocation in the event of a technical violation of the conditions of probation and (2) mandating the dismissal of a petition for revocation if the probation department offered, and the defendant accepted and completed, intermediate sanctions. The State claims that this interpretation unduly infringes on the State's Attorney in his essential function of prosecuting violations of probation.

Before deciding whether the trial court's interpretation of section 5-6-4(i) violates the doctrine of separation of powers, we must be sure that the court is correct in its interpretation. The statute provides as follows:

> "(i) Instead of filing a violation of probation *** , an agent or employee of the supervising agency[,] with the concurrence of his or her supervisor[,] may serve on the defendant a [n]otice of [i]ntermediate [s]anctions. The [n]otice shall contain the technical violation or violations involved, the date or dates of the violation or violations, and the intermediate sanctions to be imposed. Upon receipt of the [n]otice, the defendant shall immediately accept or reject the intermediate sanctions. If the sanctions are accepted,

- 11 -

they shall be imposed immediately. If the intermediate sanctions are rejected or the defendant does not respond to the [n]otice, a violation of probation *** shall be immediately filed with the court. The State's Attorney and the sentencing court shall be notified of the [n]otice of [s]anctions. Upon successful completion of the intermediate sanctions, a court may not revoke probation *** or impose additional sanctions for the same violation. A notice of intermediate sanctions may not be issued for any violation of probation *** which could warrant an additional, separate felony charge. The intermediate sanctions shall include a term of home detention *** for multiple or repeat violations of the terms and conditions of a sentence of probation ***." 730 ILCS 5/5-6-4(i) (West 2008).

The State reads this statute differently from the trial court. By the State's interpretation, the statute contemplates the following procedure. When a defendant commits a technical, or nonfelonious, violation of the conditions of probation, the probation officer has a choice. The probation officer can either file a report of violation with the court or, with the concurrence of his or her supervisor, serve a notice of intermediate sanctions upon the defendant. If the probation officer chooses the latter course of action (serving a notice of intermediate sanctions upon the defendant), the probation officer must provide the State's Attorney and the court a copy of the notice. Providing a copy of the notice to the State's Attorney gives him or her "the opportunity

to review the alleged violation and proposed sanctions, to offer input to the probation department, and, in the exercise of the office's inherent discretion in criminal matters, to determine whether to accept the proposed plan or to proceed otherwise."  In other words, in the State's view, the notice of intermediate sanctions that the probation officer serves upon the defendant is merely a provisional offer, and if the defendant accepts the proposed intermediate sanctions immediately, as the statute requires him or her to do to avoid the filing of a report of violation, he does not thereby conclude a deal with the probation department.  There is no deal, the State argues, until the State's Attorney communicates his or her approval of the offer of intermediate sanctions.  The State's Attorney "may, as a matter of constitutional prerogative and in the exercise of discretion, proceed against the defendant," even though the probation department has offered intermediate sanctions and the defendant has accepted them and even begun to perform them.  If the defendant's efforts to comply with the sanctions go to waste as a result of the State's Attorney's subsequent disapproval of the notice of sanctions, this loss would be, according to the State, an "additional, but lawful, burden on the defendant-violator."  This waste could be avoided, the State suggests, by clearing the sanctions ahead of time with the State's Attorney, as the legislature must have intended.

Hammond seems to agree with the State's interpretation of section 5-6-4(i).  He says:  "Where the statute is followed correctly[] and the defendant is offered sanctions and the State and [c]ourt noticed at that time, if no objection is made and the sanctions are accepted and completed, the State cannot thereafter file a petition to revoke probation."  (Emphasis added.)  Thus, in Hammond's view, the efficacy of the intermediate sanctions depends on the lack of an objection by the State's Attorney.

- 13 -

The parties are imposing a significant qualification on section 5-6-4(i) that has no basis in the statutory text. From the mere sentence "The State's Attorney and the sentencing court shall be notified of the [n]otice of [s]anctions," it is quite a stretch to infer that the State's Attorney has veto power over the notice of sanctions. The legislature saw the need to apprise the State's Attorney of the notice; otherwise, the State's Attorney might file a petition for revocation while the defendant is faithfully complying with the sanctions. If the legislature, however, had intended to give the State's Attorney the power to disapprove the intermediate sanctions after the probation department offered them, the legislature surely would not have left such an important point to implication. Insomuch as the legislature deemed the approval of someone to be necessary, it said so outright: the supervisor of the probation officer has to concur with serving a notice of sanctions on the defendant, and the defendant has to accept the sanctions immediately. 730 ILCS 5/5-6-4(i) (West 2008). Under the principle of expressio unius est exclusio alterius, the specification of those whose concurrence is required implies that no one else's concurrence is required. See In re D.W., 214 Ill. 2d 289, 308, 827 N.E.2d 466, 479 (2005).

Also, making the State's Attorney's approval an implied condition of valid intermediate sanctions would turn section 5-6-4(i) into a procedural mess. For example, the statute says that if the defendant means to accept the proposed sanctions, he or she must do so immediately upon receiving the notice, and then the sanctions go into effect immediately upon the defendant's acceptance. 730 ILCS 5/5-6-4(i) (West 2008). It is unclear why the legislature would require the defendant to accept the sanctions immediately and why the legislature would make the sanctions effective

- 14 -

immediately if, as the parties believe, the State's Attorney thereafter gets to determine whether there shall even be any sanctions. According to the State, the State's Attorney makes that determination upon receiving a copy of the notice. But, by then, the defendant already has received the notice and is laboring or persevering through the sanctions--which, under the State's interpretation, might be pointless because the State's Attorney has yet to validate them. Such a procedure would make no sense.

If we take the statute at face value, as the trial court did, we end up with a coherent procedure. Here is what happens. When the defendant commits a technical violation of probation, the probation officer may either file a report of violation or, with the approval of his or her supervisor, serve on the defendant a notice of intermediate sanctions. If the probation officer serves upon the defendant a notice of sanctions, the defendant must make a choice then and there: yes or no to the sanctions. If the defendant rejects the sanctions, the probation officer files a report of violation with the circuit court. If the defendant accepts the sanctions, the probation officer sends a copy of the notice of sanctions to the State's Attorney and files another copy with the court, and the sanctions go into effect immediately. If the defendant completes the sanctions, the court shall not revoke probation for the technical violation or violations that occasioned the sanctions or impose any other sanctions therefor. Those are the simple and straightforward terms of section 5-6-4(i), which we interpret de novo (Gekas v. Williamson, 393 Ill. App. 3d 573, 579, 912 N.E.2d 347, 352 (2009)). There are no covert exceptions, limitations, conditions, or qualifications. Therefore, the court was correct in its reading of section 5-6-4(i). Hammond's completion of sanctions entitled him to a dismissal of the petition for revocation of probation, under the terms of the statute.

## 2. Separation of Powers

The State argues that if the trial court was correct in holding that section 5-6-4(i) mandated the dismissal of the petition to revoke Hammond's probation even though the State's Attorney never approved the offer of sanctions, the statute violates the doctrine of separation of powers because a probation department, by serving a notice of sanctions on the defendant, can effectively prevent the State's Attorney from filing a petition for revocation (assuming the defendant accepts the sanctions and completes them). The State argues that by enacting section 5-6-4(i), the legislature unduly infringed on the executive branch (of which the State's Attorney is an officer) by transferring an essential function of the executive branch to the judicial branch, namely, the function of deciding whether to prosecute a technical violation of the conditions of probation.

Because the issue, as the State frames it, is whether the judicial branch infringed on the executive branch (at the direction of the legislative branch), it does not matter which member of the judicial branch actually accomplished the alleged infringement. A probation officer is a judicial employee (730 ILCS 110/9b(3) (West 2008)), and for purposes of this issue of separation of powers as formulated by the State, the action of the probation officer was the action of the judicial branch. Therefore, according to the State, the judicial branch, through the probation department, infringed on the State's Attorney by deciding--without first giving the State's Attorney an opportunity to be heard--that Hammond's nonfelonious violation of probation would not result in a revocation of probation, provided that Hammond immediately accepted and then completed intermediate sanctions.

- 16 -

Essentially, the State's objection is not that the judicial branch has "exert[ed] a substantial power belonging to" the State's Attorney but that the judicial branch, in exercising its own power, has disregarded the State's Attorney. See People v. Izzo, 195 Ill. 2d 109, 117, 745 N.E.2d 548, 553 (2001). Granting, denying, continuing, modifying, or discontinuing probation is an essential judicial function. See Agran v. Checker Taxi Co., 412 Ill. 145, 150, 105 N.E.2d 713, 715 (1952) ("The power to adjudge, determine[,] and render a judgment is beyond all question a judicial act"). In essence, the State's grievance is that, pursuant to section 5-6-4(i), the judicial branch went ahead and conditionally decided to continue Hammond's probation without first giving the State's Attorney an opportunity to present his views. The State's Attorney never had a chance to file a petition for revocation before the decision was made. In other words, the judicial branch exercised its power without the State's Attorney's input--and, therefore, precipitously, ill-advisedly, in a procedurally unfair way, or whatever adverb one wishes to use. Nevertheless, the judicial branch exercised its own power, not the State's Attorney's power. The State's Attorney never had the power to decide what ultimately should be done about a technical violation of probation. The defective manner in which the judicial branch exercised its power does not change the fact that the power was judicial rather than executive.

### B. Gaither's Case

#### 1. Separation of Powers

The State argues that by ordering Mund to offer Gaither intermediate sanctions after the State had already filed a petition for revocation of probation, the trial court "effectively direct[ed] the probation officer to veto, to invalidate, the [S]tate's

[A]ttorney's action of filing the petition to revoke probation." The State maintains that if the court correctly interpreted section 5-6-4(i) of the Code (730 ILCS 5/5-6-4(i) (West 2008))--if the statute allows the probation department, by the offering of intermediate sanctions, to "veto" the State's Attorney's petition for revocation of probation--the statue violates the doctrine of separation of powers, for the legislature transferred to probation officers a substantial power belonging to the State's Attorney, namely, the power to decide whether to seek revocation of probation for a technical violation. See County of Cook ex rel. Rifkin v. Bear Stearns & Co., 215 Ill. 2d 466, 475, 831 N.E.2d 563, 569 (2005); Izzo, 195 Ill. 2d at 116, 745 N.E.2d at 553.

Actually, section 5-6-4(i) does not give the probation officer and his or her supervisor the power, by themselves, to forestall a revocation of probation. The defendant also must "immediately accept" the offer of intermediate sanctions and successfully complete the sanctions. 730 ILCS 5/5-6-4(i) (West 2008). Therefore, staving off a revocation of probation in consequence of a technical violation depends as much on the defendant as on the probation department. By the State's logic, the legislature transferred the State's Attorney's power not only to probation officers but also to defendants--by giving them the opportunity to reform and redeem themselves.

In Gaither's case, moreover, the probation officer did not exercise any power at all, other than deciding what the intermediate sanctions would be. The offer of intermediate sanctions originated with the trial court. The court ordered Mund to offer intermediate sanctions to Gaither. After Gaither accepted the intermediate sanctions and completed them, the court denied the State's petition for revocation of probation-- or dismissed it, which comes to the same thing.

Ever since probation first became available in Illinois in 1911, the judicial branch has had the power to grant or deny a petition to revoke probation. E.g., Ill. Rev. Stat. 1911, ch. 38, §509f; Ill. Rev. Stat. 1991, ch. 38, §1005-6-4(e). If a branch of government traditionally has performed a certain function over a long period of time, that function probably belongs to that branch for purposes of the doctrine of separation of powers. See Best v. Taylor Machine Works, 179 Ill. 2d 367, 411, 689 N.E.2d 1057, 1079 (1997). The judicial branch has been granting or denying petitions to revoke probation for almost a century. Therefore, in Gaither's case, if the trial court had denied the petition outright and done nothing about the alleged violation, the court would not have usurped any of the State's Attorney's essential functions. In Gaither's case, however, the court took an action more favorable to the State; instead of simply denying the petition and doing nothing, the court did something: it imposed intermediate sanctions (directing Mund to decide what the sanctions would be). If denying the petition and doing nothing would not have infringed on the powers of the State's Attorney, it must follow that sanctioning Gaither in response to the State's petition did not infringe on those powers, either. The State petitioned the court, and the court awarded a remedy, just not the remedy the State desired.

## 2. Failure To Follow Statutory Procedures

Alternatively, the State argues that if section 5-6-4(i), as interpreted by the trial court, is constitutionally valid, the offer of intermediate sanctions to Gaither was "void" because the court and probation department failed to follow the procedure in that statute. The statutory procedure is like a forked path, giving the probation department a choice between filing a report of violation or offering the defendant intermediate

sanctions. See 730 ILCS 5/5-6-4(i) (West 2008). The probation department can choose one or the other, the State contends, but not both. Once the probation department files a report of violation and, in response, the State's Attorney files a petition for revocation of probation, the statute does not allow the probation department to backtrack to the fork in the road and take the other route by offering the defendant intermediate sanctions.

Gaither argues the State has forfeited this procedural objection by failing to make the objection during the hearing on September 20, 2007, when the trial court ordered Mund to offer intermediate sanctions. In that hearing, Luckman objected to intermediate sanctions on the ground of separation of powers but not on the ground of failure to follow statutory procedures. The State disagrees it has forfeited this procedural issue. The State says: "The court had entertained some argument on the issue and made its decision. The State's stating, 'I object,' would [have] be[en] superfluous. It need not have done so to avoid either waiver or forfeiture." This excuse is unconvincing. In the hearing of September 20, when defense counsel requested that "this matter be handled by administrative sanction," nothing prevented the State from saying, "Wait a minute, Your Honor. Offering intermediate sanctions at this point would violate section 5-6-4(i), because the probation department already has filed a report of violation and the State already has filed a petition for revocation of probation." The procedural objection is forfeited. See People v. Vasquez, 388 Ill. App. 3d 532, 553, 902 N.E.2d 1194, 1212 (2009).

## C. Donahue's Case

In Donahue's case, we need not address the question of whether section 5-

6-4(i), as interpreted by the trial court, violates the doctrine of separation of powers (although we already have addressed that question in Hammond's and Gaither's cases), for, in Donahue's case, the State's argument fails on its own terms. See In re E.H., 224 Ill. 2d 172, 178, 863 N.E.2d 231, 234 (2006) ("Cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort"). The State neglected to respond promptly to the notice of sanctions, as the State, in its brief, concedes it must do. The State agrees with Donahue's position that once the State's Attorney receives a notice of sanctions, the State's Attorney must communicate a timely objection, if any, or else a petition to revoke probation will be barred. If, merely for the sake of argument, we assume the correctness of the State's view that, by a timely objection, the State's Attorney could have invalidated the sanctions the probation officer offered to Donahue, the State's Attorney acquiesced to the sanctions by his delay.

After receiving the minutes of the probation department's meeting of July 10, 2008, which specified Donahue's name, her violations of probation, the dates of the violations, and the "administrative sanctions" imposed, the State's Attorney waited almost a full month to file a petition for revocation of probation. The State never explained why it took a month to file the petition. The petition was not timely.

On appeal, the State offers three excuses for the delay. First, the State characterizes the minutes as too enigmatic to function as a fair "notif[ication] of the [n]otice of [s]anctions." 730 ILCS 5/5-6-4(i) (West 2008). "Administrative sanctions," the State argues, could have been reasonably construed as referring to the punishment of an unnamed staff member rather than intermediate sanctions imposed on Donahue.

This excuse is unconvincing. "Administrative sanctions" is a term of art meaning intermediate sanctions. 11th Jud. Cir. Ct. R. 210 (eff. August 1, 2006).

Second, the State maintains that the intermediate sanctions were invalid because they required Donahue to do the types of things the probation order already required her to do, namely, report to her probation officer, and undergo substance-abuse treatment, as her probation officer directed. Nevertheless, section 5-6-4(i) says nothing about intermediate sanctions being different in nature from the preexisting conditions of probation. A defendant would experience a genuine sanction by having to perform the same tasks more often or for a longer time than the probation officer otherwise would have required.

Third, the State contends that in order for a notification of notice of sanctions to serve its purpose, the probation department had to serve the notification upon the State's Attorney before, rather than after, the sanctions commenced. The text of the statute affords no support for this contention. Section 5-6-4(i) says: "The State's Attorney and the sentencing court shall be notified of the [n]otice of [s]anctions." 730 ILCS 5/5-6-4(i) (West 2008). This sentence occurs after the sentences requiring the probation officer to serve the notice of sanctions on the defendant and requiring the defendant to accept or reject the sanctions immediately. Notifying the State's Attorney of the notice of sanctions assumes the prior existence of the notice of sanctions. Besides, the State's Attorney's receipt of the notification after rather than before the imposition of sanctions upon Donahue did not justify the State's Attorney in waiting a month to file the petition for revocation of probation.

The problem with such delay is that for every day that goes by, the

- 22 -

defendant could be devoting time, labor, and money to the fulfillment of the sanctions. For example, Donahue went into debt to obtain extra drug counseling. Thus, if the State has reason to be dissatisfied with the sanctions, the State should speak up right away rather than allow the defendant to continue acting in reliance on the offer of sanctions.

This equitable principle applies with full force to the remaining argument the State makes on appeal in Donahue's case: that the lack of home detention made the intermediate sanctions invalid and ineffectual. According to section 5-6-4(i) (730 ILCS 5/5-6-4(i) (West 2008)), "[t]he intermediate sanctions shall include a term of home detention *** for multiple *** violations of the terms and conditions of a sentence of probation." As Donahue observes, however, the State never made this argument until now. Therefore, the argument is forfeited.

Contrary to the State's suggestion, the lack of home detention does not make the trial court's judgment in this case comparable to a statutorily unauthorized-- and therefore void--sentence that is challengeable at any time, as in <u>People v. Gregory</u>, 379 Ill. App. 3d 414, 422, 883 N.E.2d 762, 769 (2008). No statute required the court to revoke Donahue's probation. If, as the State also argues, the omission of home detention made the contract between the probation department and Donahue illegal and therefore void, we are aware of no rule of law exempting that argument from procedural forfeiture, either.

D. Infringement on the Judicial Branch

In all three appeals, in the midst of the "Argument" section of its briefs, the State introduces an additional theory as to why section 5-6-4(i) violates the doctrine of separation of powers: by forcing circuit courts to delegate their judicial discretion to

probation officers in cases of a technical violation of the conditions of probation, the statute unduly infringes on the judicial branch in its determination of a sentence. For two reasons, we conclude that this theory is not properly before us. First, it does not appear, from our review of the record and from the recitation of facts in the State's briefs, that the State urged this theory in the proceedings below. Instead, the State argued that the statute infringed on the executive branch. See People ex rel. Madigan v. Leavell, 388 Ill. App. 3d 283, 290, 905 N.E.2d 849, 856 (2009) ("A party may not raise constitutional issues for the first time on appeal, and a reviewing court will deem such issues forfeited"). Second, at the beginning of its briefs, under the heading "Issues Presented," the State frames the issue, with respect to separation of powers, as whether section 5-6-4(i) infringes on the Attorney General, not the court. We do not want to run the risk that defendants would be confused or blindsided by a new theory that the State slipped into the body of its argument. See 210 Ill. 2d, R. 341(h)(3) ("A statement of the issue or issues presented for review").

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment in the three cases.

No. 4-08-0651, Affirmed.

No. 4-08-0652, Affirmed.

No. 4-09-0214, Affirmed.

McCULLOUGH, J., concurs.

MYERSCOUGH, P.J., specially concurs.

- 24 -

Specially Concurring Opinion Upon Denial of Rehearing

PRESIDING JUSTICE MYERSCOUGH, specially concurring:

I specially concur. I also would affirm. In all three cases, defendants had completed their sanctions at the time of hearing so the court could <u>not</u> revoke probation. 730 ILCS 5/5-6-4(i) (West 2008).

However, I respectfully disagree with the majority that the State's Attorney has no authority to object timely to the issuance of sanctions in lieu of revocation. Both the court and State's Attorney are entitled to notice of sanctions, and both may object to sanctions and either seek or issue a revocation upon proper notice to defendants. Probation's issuance of the notice does not deprive the State's Attorney or court of the authority over defendants' probation.