# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *People v. Hammond*, 2011 IL 110044

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CASEY HAMMOND *et al.*, Appellees.–THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. FERMIN ALBERTY, Appellant. |
| Docket Nos. | 110044, 110705 cons. |
| Filed | December 1, 2011 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Either a probation officer or a prosecutor may bring nonfelony probation violations to the attention of the circuit court, which, alone, may decide whether to revoke probation; and, if a probationer successfully completes a program offered in lieu of revocation, a prosecutor cannot veto it or force revocation |
| Decision Under Review | No. 110044.–Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Livingston County, the Hon. Jennifer H. Bauknecht, Judge, presiding.<br><br>No. 110705.–Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Sharon Sullivan, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Thomas J. Brown, State's Attorney, of Pontiac (Michael A. Scodro, Solicitor General, and Michael M. Glick and Karl R. Triebel, Assistant Attorneys General, of Chicago, and Patrick Delfino, Robert J. Biderman and Charles F. Mansfield, of the Office of the State's Attorneys Appellate Prosecutor, of Springfield, of counsel), for the People. |
| | |
| | Michael J. Pelletier, State Appellate Defender, Karen Munoz, Deputy Defender, and Catherine K. Hart, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Springfield, for appellee. |
| | |
| | Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Rachel M. Kindstrand, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant. |
| | |
| | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins and Mari R. Hatzenbuehler, Assistant State's Attorneys, of counsel), for the People. |

| Justices | JUSTICE KARMEIER delivered the judgment of the court, with opinion. |
| | Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Burke, and Theis concurred in the judgment and opinion. |

## OPINION

¶ 1    In this consolidated appeal, defendant Fermin Alberty, in a case coming to this court from Cook County (Cir. Ct. No. 05-CR-77509), argues that a probation officer lacks the authority to file a petition seeking revocation of probation; the State, in three cases originating in Livingston County (Cir. Ct. Nos. 05-CF-289, 06-CF-50, 07-CF-134), argues that a construction of section 5-6-4(i) of the Unified Code of Corrections (Code) (730 ILCS 5/5-6-4(i) (West 2006)) that does not afford the circuit court or the State's Attorney veto power over the decision of a probation officer to offer a probationer intermediate sanctions for a qualifying probation violation is unconstitutional in that it contravenes the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, § 1).

¶ 2    The Appellate Court, First District, rejected Alberty's argument that the probation officers in his case "lacked the authority to file the petitions alleging a violation of probation (VOP) and seeking revocation of probation." *Alberty*, No. 1-08-1149 (unpublished order under Supreme Court Rule 23). In the Livingston County cases, the Appellate Court, Fourth

District, with one justice specially concurring, rejected the State's argument that "section 5-6-4(i) violates the doctrine of separation of powers ( Ill. Const. 1970, art. II, § 1) by unduly infringing on the executive branch or, more specifically, the State's Attorneys in their function of prosecuting violations of probation." *Hammond*, 397 Ill. App. 3d 342, 343. We affirm the judgments of the appellate court.

¶ 3                              PRINCIPAL STATUTES INVOLVED

¶ 4        Statutes bearing upon the first issue presented will be discussed in the course of our analysis hereafter. With respect to the second issue, we set forth here the principal statutes involved in order to facilitate a better understanding of proceedings and arguments in the circuit court.

¶ 5        Section 5-6-1 of the Code provides in pertinent part that "[t]he Chief Judge of each circuit shall adopt a system of structured, intermediate sanctions for violations of the terms and conditions of a sentence of probation, conditional discharge or disposition of supervision." 730 ILCS 5/5-6-1 (West 2006). Section 5-6-4(i) of the Code provides:

> "Instead of filing a violation of probation *** an agent or employee of the supervising agency with the concurrence of his or her supervisor may serve on the defendant a Notice of Intermediate Sanctions. The Notice shall contain the technical violation or violations involved, the date or dates of the violation or violations, and the intermediate sanctions to be imposed. Upon receipt of the Notice, the defendant shall immediately accept or reject the intermediate sanctions. If the sanctions are accepted, they shall be imposed immediately. If the intermediate sanctions are rejected or the defendant does not respond to the Notice, a violation of probation *** shall be immediately filed with the court. The State's Attorney and the sentencing court shall be notified of the Notice of Sanctions. Upon successful completion of the intermediate sanctions, a court may not revoke probation *** for the same violation. A notice of intermediate sanctions may not be issued for any violation of probation *** which could warrant an additional, separate felony charge. The intermediate sanctions shall include a term of home detention as provided in Article 8A of Chapter V of this Code for multiple or repeat violations of the terms and conditions of a sentence of probation, conditional discharge, or supervision." 730 ILCS 5/5-6-4(i) (West 2006).

We note that the Eleventh Judicial Circuit, which includes Livingston County, adopted a system of structured, intermediate sanctions, pursuant to the mandate of section 5-6-1 of the Code (see generally 11th Judicial Cir. Ct. R. 210 (Aug. 1, 2006)), that established a procedural preference for sanctions over revocation proceedings where qualifying violations are concerned.

¶ 6                                   BACKGROUND
¶ 7                                   (Issue No. 1)
¶ 8        The case presenting the first issue comes to this court from Cook County where

defendant Fermin Alberty had his probation revoked in a proceeding initiated on April 18, 2007, when a probation officer filed a "petition for violation of probation and warrant." The petition alleged that defendant had violated a condition of his probation in that he had failed to report for intensive probation on three occasions. The petition requested that the court "determine whether or not the probation shall be revoked and if so, what new sentence and modifications shall be imposed, if any." A supplemental petition for violation of probation was filed on November 8, 2007, alleging that defendant had committed additional violations insofar as he had failed to report on two dates and had failed to attend outpatient drug meetings on three dates.

¶ 9     Following a hearing on December 12, 2007, the circuit court found defendant guilty of violating his probation. The court concluded that the State had proved defendant had violated his probation by not reporting on three separate occasions. Defendant was subsequently sentenced to five years' imprisonment.

¶ 10    On appeal, defendant contended that the order revoking his probation should be reversed because the probation officers lacked the authority to file the petitions at issue. The Appellate Court, First District, held otherwise, following its prior decision in *People v. Keller*, 399 Ill. App. 3d 654 (2010), and rejecting defendant's reliance upon *People v. Herrin*, 385 Ill. App. 3d 187 (2008), and *People v. Kellems*, 373 Ill. App. 3d 1129 (2007), which held, respectively, only the State's Attorney, and not a probation officer, has the authority to file a petition to revoke probation or supervision.

¶ 11                                    (Issue No. 2)

¶ 12    The three cases presenting the second issue come to this court from Livingston County, where defendants Casey Hammond and Christopher Gaither were serving sentences of probation for drug offenses, and Kelly Donahue was serving a sentence of probation for unlawful use of a credit card number, when the State's Attorney filed petitions to revoke probation. Each defendant's probation order contained, as a condition of probation, a provision subjecting the defendant to "the Administrative Sanctions Program" adopted by the Eleventh Judicial Circuit.

¶ 13    The petition in Gaither's case, filed by the State's Attorney on May 23, 2007, at the request of the probation department, alleged that Gaither had violated his probation by entering a bar on May 11, 2007, and consuming alcohol.

¶ 14    On June 29, 2007, defendant appeared before Judge Jennifer Bauknecht on the petition to revoke. After advising defendant of his rights and inquiring into his circumstances for purposes of representation, the court addressed Erick Mund, the probation officer who had filed the report of probation that led to the filing of the petition to revoke, asking: "[W]as this not eligible for administrative sanction?" Mund represented that "the State got the report; and they were going to file." The court again asked: "Isn't there an administrative sanction supposed to be imposed pursuant to law?" The attending assistant State's Attorney, Carey Luckman, interjected: "Whether that law is law." The following colloquy then ensued:

          "THE COURT: It's a rule. Eleventh Circuit. So I'm following it.

          MR. LUCKMAN: I understand it. There may come a test of that at some point.

-4-

I'm trying to get across the State's Attorney's view.

THE COURT: I understand the State's Attorney's position very well. He's discussed it with me. If I've got a court order that requires administrative sanction on this, I would start there, which is where we normally start with these. Is it on a basic conditions? How does that work?

MR. MUND: Administrative sanction eligibility is on the basic conditions. Yes. So he would have been eligible. However, before that was offered, the State had gone forward with the PTR [petition to revoke].

\* \* \*

MR. LUCKMAN: Actually there was a recommendation or a request that the petition be filed if I'm not mistaken which predates the petition."

Subsequent questioning revealed–and the report of probation confirms–that *Mund* had requested the filing of a petition to revoke, though the extent to which that recommendation was affected by communication with the State's Attorney's office was never clarified. Under inquiry by the court, Mund admitted the alleged violation was defendant's first violation of the conditions of probation.

"THE COURT: \*\*\* My question is he is subject to the administrative sanctions program pursuant to the basic conditions of probation that I placed him on. So do we just circumvent that? Is that what we're doing?

MR. LUCKMAN: There may come a time when there's going to be a test of that.

THE COURT: Is that time now?

MR. LUCKMAN: It may be. The petition is filed, and this may be it. I don't know.

THE COURT: All right. Any idea what's going on, Mr. Gaither?

THE DEFENDANT: No, ma'am.

THE COURT: Part of your probation condition is that you are subject to the administrative sanctions program. That means if there's a violation pertaining to drugs or alcohol that they offer you an administrative sanction pursuant to the Eleventh Circuit rules and subject to the statutes of the State of Illinois which authorize the Circuit to adopt an administrative sanction program which is what the Eleventh Circuit has done. That's just the legal basis for why there's this administrative sanctions program which allows you to do something through probation before you are brought in here on a petition to revoke.

All right. Apparently for whatever reason, they opted to do a petition to revoke rather than an administrative sanction program. Well, the ramifications are extreme obviously because an administrative sanction, I'm not sure what the sanctions are. You'd have to do some kind of eval or testing or community service or something, but you're not facing having your probation order revoked."

The judge stated she would continue the matter: "to find out what the State's position is going to be" and "to find out what I can do in requiring that there be compliance with the administrative sanctions program before going forward on the petition to revoke."

¶ 15    On the next hearing date, July 13, 2007, Judge Bauknecht indicated she had reviewed "the statute" and "the administrative sanctions program *** implemented by Court Services." She then stated that proceedings on the petition to revoke would continue, unless the State chose to withdraw the petition, which it did not. The court advised defendant of his rights and appointed the public defender to represent him.

¶ 16    On September 20, 2007, defendant appeared with counsel. The court again inquired "whether or not an administrative sanction was offered on this," whether that came up in this case. The State responded affirmatively. Mund advised the court that an administrative sanction was not offered by the probation department. Luckman told the court an administrative sanction was not offered because the State had indicated a petition to revoke would be filed. Defense counsel requested leave to file a motion requesting, pursuant to "730 ILCS 5/5-6-1 and Circuit Rule 209 that [the] matter be handled by administrative sanction." The court then addressed Luckman:

> "THE COURT: I read the rule. Why do you think this doesn't apply?
>
> MR. LUCKMAN: Whether it applies or not, the rule is not mandatory. We can get to the constitutional issue if we want to get there, but I don't think we get there because if I remember right, the rule talks about may.
>
> THE COURT: Yeah. Well, except that the Court Services department is not the ones [*sic*] that provide the information to the State's Attorney's Office. They should be offering an administrative sanction regardless of what the State's Attorney's office does; and if Mr. Gaither does the administrative sanction, then the State cannot do a PTR; but the State does not tell probation whether or not to offer the administrative sanction.
>
> MR. LUCKMAN: Well, then it is unconstitutional. You are taking away from the prosecuting authority the authority to initiate the action.
>
> THE COURT: Well, then I guess we'll have a motion on that. We can have a motion on that. But in my opinion, the whole reason for the administrative sanction program is for such a case as this where we've got a person that was found guilty of selling cocaine. He's now caught in a bar, and we want to revoke his probation and send him to prison.
>
> Mr. Mund, you are directed to offer an administrative sanction to Mr. Gaither following this hearing today; and we can deal with the constitutionality of it if we want to. I will allow Mr. Smith leave to file his motion, and then we'll get some research on the issue of how the administrative sanctions are to work. But my understanding is that it's offered unless the Court orders that it's not, which I have not done; and I understand why Court Services delayed because they were apparently told a PTR was going to be filed. But if an administrative sanction is offered and if it's completed, then I believe the rule is clear that you cannot file a PTR.
>
> Now you might have a question because the PTR was filed before the administrative sanction was offered, and I guess we'll take that up in argument.
>
> MR. LUCKMAN: Well, I guess we certainly won't be dealing with the probation office request to tie anybody up in custody or the statute that ties people up in

custody because I have to wait for the probation office to determine if they are going to offer an administrative sanction while I have somebody on a probation violation. It's going to create some interesting wrinkles. That's one of the problems with a set of statutes and rules that are not congruent."

¶ 17 Defendant filed his motion to dismiss on November 21, 2007. In that motion, defendant stated that he was offered an administrative sanction subsequent to the filing of a petition to revoke, he accepted, and he had "completed all things required by him to be done as a result of the Sanction." He argued, pursuant to the provisions of section 5-6-4(i) of the Code of Corrections and Eleventh Judicial Circuit Rule 210, the petition to revoke should be dismissed as a result of his successful completion of the administrative sanction imposed on him.

¶ 18 Defendant's motion was heard on March 13, 2008. At that hearing, Luckman clarified that the State was not arguing that section 5-6-4(i) was unconstitutional:

"What we are suggesting is that if it's construed the way it would have to be construed to make the assertion of the defendant's motion doable, to make this petition to revoke subject to dismissal on the basis of the availability of sanctions, the court would have to conclude that sanctions are exclusive; and if the Court did that, then you're doing exactly that. You are creating the unconstitutionality situation."

Luckman argued, for section 5-6-4(i) to be constitutional, it has to be construed in such a way that the State always has the discretion, irrespective of the availability of intermediate sanctions, to file a petition to revoke probation. Luckman stated: "That's the constitution. The State's Attorney. That's where the real discretion lies."

¶ 19 The court interrupted:

"The State has to be willing to exercise the discretion it's given, and the State does not exercise discretion. We do this, that, and this. But I don't see too much discretion going on here.

We're going to take this up on appeal because this person over 21 years of age has been successfully on a term of probation for a term of two years and does the stupidest ever and goes in a bar. He violated his probation order. *** He should be sanctioned. He was sanctioned.

That's the whole–To me, this case is exactly why we have administrative sanctions because I have now spent how many hearings because he was stupid enough to go into a bar when he was told by the Court not to go into a bar when he violated no other law. He wasn't accused of any other crimes. It's a technical violation that has taken my time, your time, Mr. Smith's time, probation's time for what?

MR. LUCKMAN: Because–

THE COURT: Because the State wants to do it that way. Not what the statute says. The statute says probation may offer."

The court added without disputation by the State:

"But knowing there had been consultation between the State's Attorney's office and

between the probation department. Probation held off because they were under the understanding that the State had that discretion when, in fact, it gives the discretion to the probation officer. It still doesn't answer the question of the motion to dismiss. Then in my opinion the statute allows the probation department to offer a sanction which was done. It also allows Mr. Gaither to accept that and fulfill the obligations of the sanction which he did. Then upon successful completion of the intermediate sanctions which has happened I cannot revoke his probation. It's my belief that I cannot revoke his probation or order any additional sanctions because in my opinion he has been appropriately sanctioned for the violation of going into the bar. He has been appropriately sanctioned in accordance with the statute. Motion to dismiss granted."

¶ 20    The State filed a motion to reconsider, which was heard on August 6, 2008. At that hearing, Mr. Luckman summarized the State's position:

"In a nutshell, the point is that the Court's construction of the statute which would make [*sic*] the sanction process and place it in the hands of probation and the offender, the Defendant probationer, control and take away from the State's Attorney the ability to proceed upon a petition to revoke does two things.

One is it necessarily rejects and renders nugatory a number of other statutes that we have to recognize the by-play with the administrative sanction statute with that provision, the authority to arrest a probationer and a number of other things.

And the second aspect of it is, and this is where we reach the constitutional issue, that is a pure separation of powers issue because it takes out of the hands of the only, the only branch of the government which can prosecute a case in the name of the State of Illinois, the executive branch, *** in this instance the State's Attorney, that exclusivity which prevents the State's Attorney from proceeding on a violation, proceeding to prosecute that case is what creates the separation of powers anomaly that would render this, the analysis that results in dismissal an unconstitutional interpretation of the statute."

¶ 21    The court concluded that administrative sanctions were appropriately and constitutionally applied, and it denied the motion to reconsider.

¶ 22    The positions taken by the institutional parties–the court and the State–were not significantly different in the cases of Hammond and Donahue. Only the procedural posture of the cases differ.

¶ 23    On May 12, 2008, the State filed a petition to revoke Hammond's probation. The petition alleged that on or about March 1, 2008, Hammond used marijuana and thereby violated a criminal statute.

¶ 24    Hammond filed a motion to dismiss the State's petition, alleging that before the State filed its petition, the probation office had offered him an "Administrative Sanction *** in lieu of a Petition to Revoke Probation being filed"; he had accepted the sanction and completed all of its requirements; and, therefore, section 5-6-4(i) of the Code required the dismissal of the State's petition.

¶ 25    On July 9, 2008, the State filed a memorandum opposing the motion for dismissal. The

State did not dispute the factual basis of the motion, *i.e.*, that before the filing of the petition to revoke probation, Hammond had accepted and complied with intermediate sanctions. Instead, the State raised the same constitutional objection asserted in Gaither's case. The State argued that interpreting section 5-6-4(i) as requiring dismissal of the State's petition for revocation would abrogate the authority of the State's Attorney to prosecute violations of probation and thus would violate the doctrine of separation of powers.

¶ 26   On July 10, 2008, a hearing on the motion to dismiss was held before Judge Harold Frobish, who expressed the belief that section 5-6-4(i) was unconstitutional but did not actually rule on Hammond's motion for dismissal. The matter was continued to a date when Judge Bauknecht presided. She ultimately granted the motion to dismiss, concluding "there's nothing different in this case than the Gaither case."

¶ 27   On August 7, 2008, a petition was filed seeking revocation of Donahue's probation. An amended petition to revoke probation was filed in Donahue's case on October 7, 2008. The amended petition alleged that Donahue had left the state without permission, she had admitted smoking cocaine in May 2008 and marijuana in July 2008, and she had failed to report to her probation officer in May and June of 2008. The State had learned of these violations from minutes of the probation department's staff meeting of July 10, 2008. According to the minutes, the probation department chose to handle the violations through administrative sanctions.

¶ 28   On November 17, 2008, Donahue filed a motion to dismiss, alleging that "prior to the filing of said Petition to Revoke," she had been offered administrative sanctions in lieu of a petition to revoke, that she had accepted, and that she had completed all the requirements. The State points out that intermediate sanctions had been offered and accepted *before* the petition to revoke was filed on August 7, but they had not been completed at that time.

¶ 29   On December 8, 2008, the trial court held a hearing on Donahue's motion for dismissal. Luckman argued that giving statutory notice of intermediate sanctions to the State's Attorney "after the fact [was] a pretty useless thing if the State's Attorney [was to have] any function and a role." He read the statute as "intend[ing] a notice in time to say[,] ['N]o, we're filing a petition[']; not a notice after [it was] a fait accompli." He reasserted the constitutional argument he had made in the other cases. The circuit court noted the "ongoing issue" in the county with respect to the State's Attorney's interpretation of section 5-6-4, and observed "the matter remains pending before the Fourth District on appeal from our State's Attorney's office." The court granted defendant's motion to dismiss, finding that defendant had successfully completed the sanction. The State's motion to reconsider was denied on February 23, 2009.

¶ 30   The appellate court consolidated the appeals and affirmed the judgments of the circuit court. The court addressed Hammond's case first, presumably because it presented the most straightforward procedural posture for purposes of applying section 5-6-4(i). The court declined to read into section 5-6-4(i) "a significant qualification *** that has no basis in the statutory text," *i.e.*, an inference "that the State's Attorney has veto power over the notice of sanctions." *Hammond*, 397 Ill. App. 3d at 350-51. The court reasoned:

> "If the legislature *** had intended to give the State's Attorney the power to

disapprove the intermediate sanctions after the probation department offered them, the legislature surely would not have left such an important point to implication. Insomuch as the legislature deemed the approval of someone to be necessary, it said so outright: the supervisor of the probation officer has to concur with serving a notice of sanctions on the defendant, and the defendant has to accept the sanctions immediately. 730 ILCS 5/5-6-4(i) (West 2008). Under the principle of *expressio unius est exclusio alterius*, the specification of those whose concurrence is required implies that no one else's concurrence is required. See *In re D.W.*, 214 Ill. 2d 289, 308, 827 N.E.2d 466, 479 (2005)." *Hammond*, 397 Ill. App. 3d at 351.

¶ 31 The appellate court concluded that the circuit court was correct in its reading and application of section 5-6-4(i) in Hammond's case. Hammond was offered sanctions, he accepted and completed the sanctions; thus, his probation could not be revoked, and dismissal of the petition to do so was indicated. See *Hammond*, 397 Ill. App. 3d at 352 (the statute contains "no covert exceptions, limitations, conditions, or qualifications"); see also 730 ILCS 5/5-6-4(i) (West 2008) ("Upon successful completion of the intermediate sanctions, a court may not revoke probation *** or impose additional sanctions for the same violation.").

¶ 32 The appellate court next addressed the State's separation of powers argument in Hammond's case, framing the issue in the following terms: "[A]ccording to the State, the judicial branch, through the probation department, infringed on the State's Attorney by deciding–without first giving the State's Attorney an opportunity to be heard–that Hammond's nonfelonious violation of probation would not result in a revocation of probation, provided that Hammond immediately accepted and then completed intermediate sanctions." *Hammond*, 397 Ill. App. 3d at 352. "Essentially, the State's objection is not that the judicial branch has 'exert[ed] a substantial power belonging to' the State's Attorney but that the judicial branch, in exercising its own power, has disregarded the State's Attorney." *Hammond*, 397 Ill. App. 3d at 352-53. The court concluded there was no separation of powers violation because the State's Attorney never had the power to determine whether or not Hammond's probation would be revoked. *Hammond*, 397 Ill. App. 3d at 353.

¶ 33 The appellate court applied similar reasoning in rejecting the State's separation of powers argument in Gaither's case. In that case, the State argued, if the statute allows the probation department, by the offering of intermediate sanctions, to "veto" the State's Attorney's petition for revocation of probation, the statute violates the doctrine of separation of powers, in that "the legislature transferred to probation officers a substantial power belonging to the State's Attorney, namely, the power to decide whether to seek revocation of probation for a technical violation." *Hammond*, 397 Ill. App. 3d at 353.

¶ 34 The appellate court answered that argument by first noting:

"[T]he probation officer [in Gaither's case] did not exercise any power at all, other than deciding what the intermediate sanctions would be. The offer of intermediate sanctions originated with the trial court. The court ordered Mund to offer intermediate sanctions to Gaither. After Gaither accepted the intermediate sanctions and completed them, the court denied the State's petition for revocation of

-10-

probation–or dismissed it, which comes to the same thing." *Hammond*, 397 Ill. App. 3d at 354.

¶ 35 The appellate court then observed that the judicial branch has long exercised the power to grant or deny a petition to revoke and, in this case, had the circuit court "denied the petition outright and done nothing about the alleged violation, the court would not have usurped any of the State's Attorney's essential functions." *Hammond*, 397 Ill. App. 3d at 354. "If denying the petition and doing nothing would not have infringed on the powers of the State's Attorney, it must follow that sanctioning Gaither in response to the State's petition did not infringe on those powers, either." *Hammond*, 397 Ill. App. 3d at 354.

¶ 36 The appellate court next noted the State's argument that the offer of intermediate sanctions to Gaither was "void" because the court and probation department failed to follow the procedure in that statute. The State asserted, once the probation department filed a report of violation, and the State filed a petition to revoke in response, it was too late to "backtrack" and offer the defendant intermediate sanctions. The appellate court found the State had forfeited this procedural objection by failing to make the objection at the hearing on September 20, 2007, when the circuit court directed Mund to offer intermediate sanctions. *Hammond*, 397 Ill. App. 3d at 355.

¶ 37 In Donahue's case, the appellate court determined it need not even address the constitutional question because the State, by failing to file in a timely manner after receiving notice that sanctions had been offered–delaying almost a full month before filing its petition to revoke–had acquiesced to the sanctions. The court rejected excuses offered by the State for the delay and noted the inequity in allowing Donahue to spend time and money attempting to comply with the requirements of the sanctions only to have the State file a belated petition to revoke that could render it all for naught. *Hammond*, 397 Ill. App. 3d at 355. The court also found forfeited the State's argument that the sanctions imposed on Donahue were unauthorized, and therefore void, because home detention was statutorily required in light of Donahue's multiple violations of probation. The appellate court stated: "[W]e are aware of no rule of law exempting that argument from procedural forfeiture, either." *Hammond*, 397 Ill. App. 3d at 357.

¶ 38 Finally, the appellate court found the contention that the statute improperly delegates judicial authority to probation officers was not properly before court since the State had not urged that theory below and had not framed the issue in those terms on appeal. *Hammond*, 397 Ill. App. 3d at 357.

¶ 39                                   ANALYSIS

¶ 40                                  (Issue No. 1)

¶ 41 With respect to the first issue presented in this appeal, defendant Alberty contends that "the plain language of the applicable statutes"–730 ILCS 5/5-6-4 (West 2006) and 730 ILCS 110/12 (West 2006)–"does not grant probation officers the authority to file petitions to revoke probation." Moreover, he argues to interpret the statutes otherwise would result in a derogation of the express statutory authority granted a State's Attorney, pursuant to section 3-9005(a)(1) of the Counties Code (55 ILCS 5/3-9005(a)(1) (West 2006) ("[t]o commence

and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned")). Defendant submits that "[c]onstruing the statutes to allow a probation officer, who is a judicial employee, to file a petition in lieu of the State's Attorney raises significant separation of powers issues that should be avoided."

¶ 42       Though the State would avoid this issue altogether by arguing forfeiture–defendant did not object to the initiating procedure in the circuit court–the State ultimately sees no separation of powers problem:

> "[T]he simple ministerial act of filing a violation of probation is not a prosecutorial duty firmly and exclusively on the side of the executive. On the contrary, it is merely one way for the court (and defendant) to receive notice of the violation, which is then prosecuted by the State's Attorney."

The State points out that our state constitution does not specifically delineate which powers are legislative, which are executive, and which are judicial, and that this court has recognized the separation of powers provision "is not designed to achieve a complete divorce" among the governmental branches. We find the State's position in this context significant and worth quoting at length:

> "Inevitably, there will be areas in which the separate spheres of government overlap, and in which certain functions are shared. *County of Kane v. Carlson*, 116 Ill. 2d 186, 208 (1987). Put simply, the three branches of government are 'parts of a single operating government, and *** the separation of powers clause was not designed to achieve a complete divorce among them.' *County of Kane*, 116 Ill. 2d at 208, quoting *People v. Reiner*, 6 Ill. 2d 337, 342 (1955). Consistent with that principle, this Court has upheld legislative enactments pertaining to judicial practice that do not unduly encroach upon inherent judicial powers or conflict with any of its rules. *People v. Phillips*, 66 Ill. 2d 412 (1977) (statute providing probation officer with the power to withhold permission for probation [*sic*] to undergo drug treatment instead of prosecution not unconstitutional invasion of judicial power to sentence); *In re T.W.*, 101 Ill. 2d 438, 441-42 (1984). And this Court has upheld a circuit court's order requiring the State to file a petition to terminate parental rights against a separation of powers challenge. See *In re D.S.*, 198 Ill. 2d 309, 325 (2001) ('the circuit court may order the office of the State's Attorney to prosecute a petition under the Act against its wishes if the court determines that such prosecution is in the best interests of the minor'), citing *In re J.J.*, 142 Ill. 2d 1, 11 (1991) (separation of powers doctrine 'was not designed to achieve a complete divorce among the three branches of government' and does not require 'governmental powers to be divided into rigid, mutually exclusive compartments')."

Thus, in *this* case, the State takes a flexible approach to separation of powers concerns, arguing that various statutory provisions authorize a probation officer to file a "petition for violation" and suggesting there is no separation of powers violation in doing so. We agree with the State in both respects.

¶ 43       We begin our analysis of this issue by clarifying that the probation officer in defendant

-12-

Alberty's case did not file a "petition to revoke"; he filed a "petition for violation of probation" in which he alleged that defendant had violated a condition of his probation and he requested that the court "determine whether or not the probation shall be revoked and if so, what new sentence and modifications shall be imposed, if any." The nuance we suggest is notable in that the probation officer was not advocating for a particular result in this instance; by filing the petition, he merely brought the violations of which he was aware–because of his supervisory role–to the attention of the court and the State, recognizing that it was for the State to prove the violations in court, and, if proved, the court to decide whether defendant's probation should be revoked or some less severe measure should be taken.

¶ 44    The action taken by the probation officer seems to us entirely consistent with all the relevant statutory provisions and it comports with recognized principles governing separation of powers.

¶ 45    Probation officers are explicitly charged by statute with the duty to "take charge of and watch over all persons placed on probation" (730 ILCS 110/12(5) (West 2006)), to "preserve complete and accurate records" during the continuance of a probationer's probation, "which records shall be open to inspection by any judge or by any probation officer pursuant to order of court" (730 ILCS 110/12(4) (West 2006)), and to "perform such other duties as are provided for in this act or by rules of court and such incidental duties as may be implied from those expressly required" (730 ILCS 110/12(9) (West 2006)).

¶ 46    This court has recognized that probation officers, for purposes of the Probation and Probation Officers Act, "are considered peace officers under Illinois law." *People v. Miller*, 199 Ill. 2d 541, 549 (2002) (Harrison, C.J., dissenting, joined by Kilbride, J.) (citing 730 ILCS 110/15(12) (West 2000)). Thus, a corollary of implied authority may be drawn from the recognized authority of other peace officers. In Illinois, a misdemeanor offense may be charged by a police officer, via complaint, in the name of the People of the State of Illinois (see *People v. Van Schoyck*, 232 Ill. 2d 330, 338, 343 (2009) (Garman, J., dissenting, joined by Thomas and Karmeier, JJ.)); though this court has held the police officer's actions in the first instance must yield to the judgment and discretion of the State's Attorney, the constitutional officer empowered to act. See *People v. Pankey*, 94 Ill. 2d 12, 18 (1983). Under either authority, it seems to us, a probation officer–whose range of duties has, on occasion, led even this court to blur the distinction between governmental branches (see *In re T.W.*, 101 Ill. 2d 438, 441-42 (1984) (suggesting that the requirement of a probationer officer's consent, at issue in *Phillips*, entailed "a provision requiring consent of an officer in the *executive* branch of government" (emphasis added))–inferentially possesses the authority to file a petition charging a violation of a condition of probation by one whom he or she supervises. The executive authority to proceed with, or move for dismissal of, the action, in the case of a charged violation of probation, always rests with the State's Attorney, who is shouldered with the burden of proving up the violation in a contested case. See 730 ILCS 5/5-6-4(c) (West 2006) (State has the burden of proving the violation by a preponderance of the evidence).

¶ 47    The language of subsection (i) of section 5-6-4 also supports the view that a probation officer may file a petition charging a violation of probation, as the probation officer did here.

Subsection (i), the provision we will be addressing in our treatment of Issue No. 2, states in pertinent part: "Instead of filing a violation of probation *** an agent or employee of the supervising agency with the concurrence of his or her supervisor may serve on the defendant a Notice of Intermediate Sanctions." 730 ILCS 5/5-6-4(i) (West 2006). It seems clear to us that the "supervising agency" referenced by this statute is the probation or court services department, and that the statute authorizes that entity to pursue two options in the event a probationer violates a condition of probation: file a violation of probation pursuant to subsection (a), or offer intermediate sanctions pursuant to subsection (i) and the circuit court's rules of implementation, mandated by section 5-6-1. Thus, the explicit language of the statute reinforces our view–arrived at by reference to other statutory provisions and enforcement practices in different contexts–that probation officers possess the authority to file petitions charging a violation of probation, as the probation officer did in this case. Consequently, we affirm the judgment of the appellate court in cause No. 110705.

¶ 48                                     (Issue No. 2)

¶ 49       Initially, the parties agree that the three cases presenting this issue are moot because the defendants' terms of probation have expired and a court may not revoke a probationary term that has already expired. Nonetheless, the State urges us to address this issue under the public interest exception to the mootness doctrine.

¶ 50       This court does not decide moot questions or render advisory opinions. *Wright Development Group, LLC v. Walsh*, 238 Ill. 2d 620, 632 (2010). However, the public interest exception to the mootness doctrine permits a court to reach the merits of a case which would otherwise be moot if the question presented is of a public nature, an authoritative resolution of the question is desirable for the purpose of guiding public officers, and the question is likely to recur. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 395 (1994). All three factors are present here. Thus, within the limited context of the facts here presented, we will address the State's contention that section 5-6-4(i) must be construed so as to give "the State's Attorney, the court, or both," the ability to "reject an intermediate sanction agreement and proceed with timely revocation proceedings."

¶ 51       We begin our analysis on this issue by reiterating separation of powers principles to which the State seemingly subscribed in its argument on Issue No. 1. The separation of powers clause of the Illinois Constitution provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. Our constitution does not attempt to define legislative, executive and judicial power, as it is neither practicable nor possible to enumerate the myriad powers of government and to declare that a given power belongs exclusively to one branch for all time. In both theory and practice, the purpose of the provision is to ensure that the whole power of two or more branches of government shall not reside in the same hands. *People v. Walker*, 119 Ill. 2d 465, 473 (1988).

¶ 52       The separation of powers provision was not designed to achieve a complete divorce among the three branches of our tripartite system of government; "[n]or does it prescribe a division of governmental powers into rigid, mutually exclusive compartments." *Walker*, 119

-14-

Ill. 2d at 473. "By necessity, the branches of government do not operate in isolation, and between them there are some shared or overlapping powers." *People v. Felella*, 131 Ill. 2d 525, 538 (1989). The determination of when, and under what circumstances, a violation of the separation of powers doctrine has occurred remains with the judiciary. *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 411 (1997).

¶ 53    The first step in our analysis is to determine the proper construction of section 5-6-4(i), irrespective of constitutional considerations. Issues of statutory construction involve questions of law and are subject to *de novo* review. *People v. Alcozer*, 241 Ill. 2d 248, 254 (2011). The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *Alcozer*, 241 Ill. 2d at 254. The best indication of the legislature's intent is the language of the statute, given its plain and ordinary meaning. *Alcozer*, 241 Ill. 2d at 254. This court has held "it is never proper for a court to depart from plain language by reading into a statute exceptions, limitations, conditions which conflict with the clearly expressed legislative intent." *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994).

¶ 54    Our construction of section 5-6-4(i) comports with the analysis of the appellate court: "If the legislature *** had intended to give the State's Attorney the power to disapprove the intermediate sanctions after the probation department offered them, the legislature surely would not have left such an important point to implication." *Hammond*, 397 Ill. App. 3d at 351. The construction urged by the State does indeed "impos[e] a significant qualification on section 5-6-4(i) that has no basis in the statutory text," as the appellate court observed. *Hammond*, 397 Ill. App. 3d at 350. As *we* observed in our analysis of Issue No. 1, section 5-6-4(i) gives a probation officer, subject only to the approval of his or her supervisor, the authority to offer a probationer intermediate sanctions "[i]nstead of filing a violation of probation." 730 ILCS 5/5-6-4(i) (West 2006). If it were the intent of the legislature to allow the State's Attorney to intervene in this process, it surely would have said so.

¶ 55    We, of course, are under a duty to construe a statute so as to affirm the statute's constitutionality and validity, if reasonably possible. *People v. Huddleston*, 212 Ill. 2d 107, 132 (2004). Therefore, we will consider whether the statute, thusly construed, contravenes the authority of the State's Attorney in this instance and consequently violates separation of powers principles.

¶ 56    The first step in that process is to delineate the parameters of the State's Attorney's power. In this regard, we do not dispute the State's assertion that a State's Attorney has the general authority to file a petition to revoke probation–though the State has conceded (indeed argued) in the context of Issue No. 1 that a probation officer also has that authority. Certainly, as previously noted, a State's Attorney has the authority "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned" (55 ILCS 5/3-9005(a)(1) (West 2006)), and that authority is undoubtedly broad enough to encompass the commencement and prosecution of proceedings for revocation. However, the real question, as the appellate court discerned, is not whether the State's Attorney is empowered to commence an action–he is. The critical question is whether he is able to force revocation where revocation is strictly proscribed, given the facts presented herein, by a legislative enactment (if the defendant complies with the requirements of the sanctions, "a court may

-15-

not revoke probation" (730 ILCS 5/5-6-4(i) (West 2006)), and where the ultimate authority to revoke, impose lesser sanctions, or do nothing in response to a violation, lies, in any event, with the judicial branch (see 730 ILCS 5/5-6-4(e) (West 2006)), not the executive.

¶ 57    As the legislature has "the lawmaking power *** to proscribe certain types of conduct as crimes and to determine sentences for such crimes" (*Murneigh v. Gainer*, 177 Ill. 2d 287, 306 (1997))–a power that necessarily defines and restricts the circumstances in which a State's Attorney may exercise his prosecutorial authority–it follows that the legislature can dictate the requisite facts and circumstances that may result in revocation of probation. That is what the legislature has done here. An example of the application of this principle–theoretically circumscribing the authority of *both* the circuit court and the State's Attorney–can be found in *Phillips*, cited favorably by the State in its Issue No. 1 argument.

¶ 58    In that case, this court considered the constitutionality of section 8(e) of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1973, ch. 91½, ¶ 120.8(e)), which required the consent of the appropriate probation authority before a probationer could be eligible for and elect treatment under the Act instead of prosecution. At the time defendant petitioned for treatment under the Act, defendant was on probation for a previous offense and his probation officer would not consent to treatment. Ultimately, defendant pled guilty to the charges against him and was sentenced to terms of imprisonment. *Phillips*, 66 Ill. 2d at 414.

¶ 59    The appellate court reversed, holding that the lack of consent by defendant's probation officer was irrelevant. The court reasoned that the probation authority whose consent was contemplated by section 8(e) was the circuit court, which had admitted defendant to probation, not the probation officer. *Phillips*, 66 Ill. 2d at 414-15. The State appealed, contending that section 8(e) required the consent of defendant's probation officer. Defendant argued that section 8(e), if interpreted so as to require the consent of a probation officer before a defendant could be eligible for treatment, would improperly delegate to the probation officer sentencing authority which should reside with the court. In so doing, defendant argued, section 8(e) would violate article VI, section 1, of the 1970 Constitution of the State of Illinois. *Phillips*, 66 Ill. 2d at 414-15.

¶ 60    This court rejected that contention. Acknowledging that the power to impose sentence is exclusively a function of the judiciary (*Phillips*, 66 Ill. 2d at 415), this court noted that the situation at hand concerned a defendant who had been charged with, but not convicted of, a crime. Since defendant had not been *convicted* of a crime at the pertinent time for election of treatment, *sentencing* was not then at issue. Therefore, "the authority granted to the probation officer to deny treatment under the Act to persons charged with, but not convicted of, a criminal offense does not infringe upon the court's constitutional right to impose sentence." *Phillips*, 66 Ill. 2d at 415-16.

¶ 61    Obviously, the position argued by the State in *Phillips* acknowledges permissible limits on the *State's* discretionary authority as well. For in those instances when the State deemed drug treatment in the best interests of the defendant and the public, *the State* would be unable to override a veto by the probation officer.

¶ 62    The procedure outlined by the legislature in section 5-6-4(i) bears some similarity to the provision at issue in *Phillips*. This procedure can be viewed as an alternative to the

*resentencing* that would be required by revocation of probation, just as the diversionary drug treatment in *Phillips* was a means of avoiding a conviction and *sentencing.* In that sense, section 5-6-4(i) represents a diversionary procedure intended to avoid revocation, with its attendant costs to the judicial system, and ultimately to the public.

¶ 63    Moreover, this is hardly the sole instance in which a State's Attorney's discretion is circumscribed, or in which the opportunity to exercise it is limited by antecedental events.

¶ 64    Looking at this matter from another perspective, that of a "peace officer" effectively depriving a State's Attorney of his or her opportunity to exercise discretionary authority, we see this situation as differing little from another "immediate intervention program" (see 705 ILCS 405/5-300 (West 2008)) implemented by the legislature: the station adjustment procedure employed by law officers in juvenile cases. See 705 ILCS 405/5-301 (West 2008). That procedure gives juvenile police officers in Illinois the discretionary authority, after considering a list of factors (see 705 ILCS 405/301(A) through (F) (West 2008)), to handle juvenile offenses through station adjustments. This court has described a station adjustment as "a verbal warning from the police." *People v. Clark*, 119 Ill. 2d 1, 9 (1987); see also *In re J.J.C.*, 294 Ill. App. 3d 227, 238 (1998) ("[S]tation adjustments are merely verbal warnings from the police, occurring when a juvenile is brought into the police station, but later released when the police have decided not to refer the matter to juvenile court."). " 'Station adjustments' involve situations where the police, after taking the juvenile to the police station, decide that the juvenile will not be prosecuted." *People v. M.D.*, 101 Ill. 2d 73, 79 (1984). When juvenile police officers issue a station adjustment, they arrest the minor, handle the case at the police station, typically with the imposition of certain conditions, and then release the minor without referring the case to court. See *Zitzka v. Village of Westmont*, 743 F. Supp. 2d 887, 905 n.5 (N.D. Ill. 2010) (citing Timothy Lavery, *Police Use of Formal and Informal Station Adjustments for Juveniles in Illinois*, On Good Authority (Illinois Criminal Justice Information Authority Nov. 2002), available at http://www. icjia.state.il.us/public/pdf/oga/station%20adjust.pdf (accessed Sept. 1, 2010)).

¶ 65    The discretion afforded a "peace officer" to handle violations in the field, without the involvement of the State's Attorney, has long been recognized in other contexts as well. For example, as courts have acknowledged, when a police officer issues a warning in lieu of a uniform citation, he is exercising his discretion not to enforce the traffic law. *People v. Gilbert*, 347 Ill. App. 3d 1034, 1040 (2004); *People ex rel. Ryan v. Village of Hanover Park*, 311 Ill. App. 3d 515, 532 (1999). "Section 107-2(1)(c) of the Code of Criminal Procedure of 1963 provides that a 'peace officer *may* arrest a person when' the officer 'has reasonable grounds to believe that the person is committing or has committed an offense.' (Emphasis added.) 725 ILCS 5/107-2(1)(c) (West 2008). This statute has been construed to mean that an officer has discretion to arrest a person 'immediately, later, or perhaps never.' " *People v. Geier*, 407 Ill. App. 3d 553, 560 (2011) (quoting in part from *People v. Shepherd*, 242 Ill. App. 3d 24, 29 (1993)).

¶ 66    Just as a police officer has *de facto* discretion in his or her enforcement of the law–resulting in instances in which a State's Attorney never gets the opportunity to exercise discretion in the matter–a probation officer is afforded discretion–by enabling statutes and the promulgation of court rules–to exercise a degree of discretion with respect to the

consequences of *technical* violations of conditions of probation by those serving a sentence of probation. This grant of authority from the legislature–via statute–and from the court–via implementing rules–does not in our opinion violate separation of powers principles. Answering Luckman's query, "Whether that law is law," we hold it is.

¶ 67　　We turn now to related or subsidiary concerns expressed by the State, all of which must be considered in light of our prior observations that the decision to offer intermediate sanctions, pursuant to section 5-6-4(i), requires no procedural input from the State, and that the circuit court, ultimately exercised *its* rightful authority in the Livingston County cases without transgressing on that of the State's Attorney.

¶ 68　　As a prerequisite to our discussion, we must acknowledge–though the State never does–the part played below by local rules adopted by the Eleventh Judicial Circuit pursuant to the legislative mandate of section 5-6-1 of the Code (730 ILCS 5/5-6-1 (West 2008) (directing the chief judge of each circuit to "adopt a system of structured, intermediate sanctions for violations of the terms and conditions of a sentence of probation, conditional discharge or disposition of supervision")).

¶ 69　　We note, notwithstanding the obvious impact of local rules on proceedings below, the parties have not provided comprehensive and clearly identifiable circuit court rules or administrative sanctions adopted pursuant to the mandate of section 5-6-1. The defendants have appended to their brief a two-page document entitled "Administrative Sanctions Program," which consists of three subsections entitled "Purpose," "General Guidelines," and "Violation Severity Scale." This document bears no effective date or indicia of jurisdiction. A third page in the appendix is entitled "Staff Acknowledgement That Office Administrative Sanction Policy Has Been Read And Understood." That document is signed by 13 individuals, Mund among them, presumably probation officers. Their signatures are all dated 2010. Finally, a fourth page in the appendix appears to be a copy of an envelope addressed to the Office of the State Appellate Defender, with a return address of "Probation/Court Services, Livingston County Office." It is not clear what relevance there would be to a document signed by probation officers *after* these cases were already disposed of in the circuit court.

¶ 70　　In any event, it is appropriate for this court to take judicial notice of the circuit court's rules (*People v. Lindsey*, 201 Ill. 2d 45, 64 (2002)), and we do so here. The Eleventh Judicial Circuit's current Rule 210 (11th Judicial Cir. Ct. R. 210 (Aug. 1, 2006)) purports to establish "an administrative sanctions program," but the administrative sanctions program on file with the Livingston County circuit court bears a much earlier date, indicating it was established pursuant to Administrative Order 96-25, entered by Chief Judge Luther H. Dearborn on September 18, 1996. The difference is inconsequential; what matters for our purposes is that the provisions of the sanctions program we hereafter reference were effective during the relevant period.

¶ 71　　The administrative sanctions program of the Eleventh Judicial Circuit (hereafter referenced as ASP) was in effect at the time the three defendants were sentenced. In fact, their orders of probation all stated they were "subject to the Administrative Sanctions Program." The features of that program, enacted on the authority of section 5-6-1 of the

Code, vary somewhat from the provisions of section 5-6-4(i). While the latter section states that the probation officer "may" offer a probationer intermediate sanctions for a qualifying violation, the rules adopted by the Eleventh Judicial Circuit structure the exercise of that discretion by making the offering of intermediate (administrative) sanctions the default position, requiring the probation officer to justify to the court instances where the probation authority deems intermediate sanctions inappropriate to the situation at hand:

> "4.2 Probation and Court Services
>
> A) Department Preclusion
>
> The determination of the terms and conditions of probation is a judicial function. Therefore, a probation and court services department may not preclude participation in the Administrative Sanctions Program.
>
> B) Department Exclusion
>
> A department may take into account an individual offender's 'situational risk' factors and find that the administrative sanction determined through use of the sanctioning matrix is inappropriate. *Under those circumstances, the department must be able to verify and document risk factors surrounding the violation, which clearly establish that administrative sanctioning is inappropriate and that a petition to revoke the offender's sentence should be filed.*" (Emphasis added.) ASP §§ 4.2(A), (B).

¶ 72 Section 4.2 appears to be part of comprehensive provisions geared toward judicial oversight of the discretion exercised by the probation authority. Section 4.0(A) allows a sentencing judge to preclude an offender's participation in the administrative sanctions program at the outset by so indicating in the order of probation at the time the defendant is sentenced. ASP § 4.0(A). Although somewhat ambiguous, we read the first paragraph of section 4.0(B) of the ASP as giving the sentencing judge, in some "jurisdictions" of the Eleventh Judicial Circuit–individual jurisdictions (counties) are not identified–the right to timely notice so that the judge may exclude the offender from further participation in the program:

> "B) Judicial Exclusion
>
> The sentencing judge shall receive notice from the probation and court services department regarding the type of violation, the sanction to be imposed, and the date of implementation, subsequent to a violation of a court order. In response to the notice, the sentencing judge may then, by motion of the court, exclude the offender from further participation in the program.
>
> In those jurisdictions where a sentencing court will receive notice of the violation and the sanction imposed subsequent to the imposition of the administrative sanction, the sentencing judge may also choose to exclude an offender from the program in order to address future violations judicially." ASP § 4.0(B).

In the same vein, section 6.4 of the ASP provides in pertinent part:

> "6.4 Judicial Notice
>
> The department shall notify the court of jurisdiction of the offender violation and

the administrative sanction to be imposed. Immediate notice will provide the judge the opportunity to review the alleged violation and the recommended sanction and exclude the offender from further participation in the Administrative Sanction Program if he/she desires." ASP § 6.4.

¶ 73 The State argues that defendant Gaither should not have received intermediate sanctions. The State represents that "[b]oth the probation officer and the State's Attorney took [defendant's] conduct seriously in light of the circumstances and the nature of defendant's conviction." The State notes that "[t]he probation office filed a report with the [circuit] court requesting that the State's Attorney file a petition to revoke probation." The State's Attorney "filed such a petition," but "the trial court directed the probation officer to offer Gaither intermediate sanctions." This, the State argues, was "improper under the statute and invaded the prosecutorial power of the State's Attorney."

¶ 74 As our analysis heretofore establishes, the State's Attorney never had any prosecutorial power with respect to the offering of intermediate sanctions. Section 5-6-4(i) places the discretion to offer administrative sanctions in the hands of the probation authority. ASP provisions adopted by the Eleventh Judicial Circuit, pursuant to the mandate of section 5-6-1, structure the exercise of that discretion by the use of a sanctioning matrix, and by subjecting the probation officer's decision to *de facto* judicial review, insofar as intermediate sanctions are *required*, pursuant to court rule, for a qualifying violation, along with appropriate notice to the court, unless the probation officer can justify the institution of revocation proceedings. See ASP § 4.2(B). Although a circuit court may not establish local rules that conflict with substantive law, including statutes and this court's rules (*Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 357 (2007)), this rule simply structures the exercise of the probation authority's discretion and subjects it to limited judicial scrutiny.

¶ 75 Returning to the State's representations, we note it is at best unclear how "seriously" Mund took Gaither's violation of a condition of probation, and whether Mund exercised any discretion at all when he filed a report requesting the filing of a petition to revoke. In this respect, the story Mund told Judge Bauknecht in court conflicts with the State's version of events here insofar as Mund, in his explanations before the court, laid the decision to seek revocation at the door of the State's Attorney's office, insisting that intermediate sanctions were not offered because he was informed by the State's Attorney's office that a petition to revoke was going to be filed. Whatever was going on between the probation department and the State's Attorney's office, it appears to us that Judge Bauknecht was inappropriately left out of the loop.

¶ 76 That troubling observation aside, the State's position still does not account for Mund's noncompliance with the ASP provisions. As our recitation of events in the circuit court reveals, despite numerous opportunities to do so, Mund never proffered any administrative justification for his failure to offer Gaither intermediate sanctions, notwithstanding Judge Bauknecht's repeated attempts to get an answer out of him. Judge Bauknecht's comments clearly indicate that she thought intermediate sanctions were not only mandatory–pursuant to court rule–but were called for under the facts and circumstances presented in Gaither's case. Given those comments, it is equally clear that Gaither would have received an offer of intermediate sanctions one way or the other: from the probation office, pursuant to the statute

-20-

and ASP provisions, had Mund exercised his discretion, or from Judge Bauknecht, on the merits, at the conclusion of a revocation proceeding.

¶ 77    As for the State's related suggestion that "backtracking" to intermediate sanctions should not be allowed after Mund had filed a report requesting the filing of a petition to revoke, we find no error in the circuit court's actions insisting upon compliance with rules and guidelines properly adopted pursuant to section 5-6-1 and implemented via court order (see *Sanders v. Shephard*, 163 Ill. 2d 534, 540 (1994) ("Vital to the administration of justice is the inherent power of courts to compel compliance with their orders.")), particularly where, as here, the aura of prosecutorial influence hangs over, and taints, the actions of the probation authority in Gaither's case.

¶ 78    We acknowledge, and briefly address, the State's arguments (1) that the facts of Hammond's case were such that he should not have received an offer of intermediate sanctions, and (2) that Donahue's failure to complete the requirements of her sanctions before the petition to revoke was filed justified a "stay" or "suspension" of the sanctions agreement "pending a resolution of the petition's merits."

¶ 79    With respect to Hammond, the State makes much of the comments of Judge Frobish, who offered his assessment of the merits, as well as his opinion regarding "misguided legislation or misguided rules," and actions that should be taken by this court. However, Judge Frobish rendered no dispositive ruling in this matter. Judge Bauknecht ruled in this case. As in the other cases before Judge Bauknecht, the State chose to restrict its argument to statutory construction and separation of powers concerns.

¶ 80    That observation aside, pursuant to our construction of section 5-6-4(i), the legislature did not intend to allow the State to challenge a probation officer's decision to offer intermediate sanctions where the offer is otherwise in accordance with the appropriate procedural protocol and is timely accepted; nor can the State intervene during the timely process of completing the requirements of sanctions. Thus, given the facts of Hammond's and Donahue's cases, the State had no statutorily recognized right of input on the merits of offering intermediate sanctions, nor of staying the same so long as they are completed in a reasonable time. The State's Attorney is, of course, free to prosecute any conduct constituting a misdemeanor violation independently, under the Criminal Code, separate and apart from revocation proceedings, if he feels he has a meritorious case and can prove up the elements of the offense beyond a reasonable doubt.

¶ 81    Finally, we address the State's suggestion that the interpretation of section 5-6-4 adopted by the appellate court, and now by this court, is unconstitutional insofar as it constitutes an improper delegation of a circuit court's authority to a probation department.

¶ 82    To properly perform our constitutional function, this court must occasionally determine the constitutionality of a statute; however, in so doing, this court is exercising the power to decide only the case before it. *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 176 (2007); *People ex rel. Difanis v. Barr*, 83 Ill. 2d 191, 202 (1980). "A fundamental principle of constitutional law is that a court will ordinarily inquire into the constitutionality of a statute only to the extent required by the case before it, and will not formulate a rule broader than that necessitated by the precise situation in question." *People v. Rogers*, 133 Ill.

2d 1, 8 (1989).

¶ 83    There was no freelance, discretionary authority exercised by the probation department in *this* case; the power exercised was always that of the judiciary. The ASP provisions adopted by the Eleventh Judicial Circuit make the offering of administrative (intermediate) sanctions the mandatory consequence for a qualifying violation of probation unless a reporting probation officer can justify the institution of revocation proceedings to the court. See ASP § 4.2(B). Subsection (A) of section 4.2 recognizes that the "determination of the terms and conditions of probation is a judicial function (ASP § 4.2(A)), and subsection (B) thereof directs the use of a detailed "sanctioning matrix" to guide the probation department in the largely ministerial function of determining the appropriate sanctions. As a safeguard, at least some jurisdictions of the Eleventh Judicial Circuit employ preemptive judicial review to ensure that the sanctions offered are appropriate. See ASP §§ 4.0(B), 6.4. In any event, Judge Bauknecht obviously thought sanctions were appropriate in Gaither's case–since she ordered them–and there is no indication in the record that she did not receive prior notice in the other two cases or that she disagreed with their implementation or character under those circumstances. In short, we need not, given the facts of these cases, determine whether application of section 5-6-4(i) might, in some hypothetical circumstance, result in an improper delegation of judicial authority, because it did not in the causes before us.

¶ 84    In sum, we hold that probation officers possess the authority to file petitions charging a violation of probation, as the probation officer did in this case. Consequently, we affirm the judgment of the appellate court in Alberty's case, cause No. 110705. We further hold that section 5-6-4(i) does not give a State's Attorney the power to "veto" a probation officer's decision to offer intermediate sanctions, so long as the sanction requirements are timely completed, and that construction does not, as contended, violate separation of powers principles expressed in our state constitution by usurping the executive's authority. Consequently, we affirm the judgment of the appellate court in the cases of Hammond, Gaither, and Donahue, cause No. 110044.

¶ 85    Affirmed.