[Cite as *State v. Crook*, 2020-Ohio-3509.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| ANGELA CROOK | : | Case No. 2019CA0017 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                 Pleas, Case No. 18CR205




JUDGMENT:                        Affirmed




DATE OF JUDGMENT:                June 26, 2020




APPEARANCES:

For Plaintiff-Appellee                   For Defendant-Appellant

BENJAMIN E. HALL                         JAMES ANZELMO
318 Chestnut Street                      446 Howland Drive
Coshocton, OH 43812                      Gahanna, OH  43230

*Wise, Earle, J.*

{¶ 1} Defendant-Appellant Angela Crook appeals the October 1, 2019 judgment of conviction and sentence of the Coshocton County Court of Common Pleas. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2} On November 1, 2018, Coshocton County Sheriff's Deputy William Mox was working a 7:00 p.m. to 3:00 a.m. shift with his canine partner Chili. Shortly before 2:00 a.m. Mox observed a Ford Explorer exiting an apartment complex known as a high drug area. As Mox followed the vehicle, he ran the plate number which came back as belonging on a Honda. Mox had dispatch run the number again to be certain, but the plate still came back as belonging on a Honda.

{¶ 3} Mox initiated a traffic stop. The driver, later identified as Crook, pulled into a gas station. Mox approached the vehicle and asked for Crook's license, registration and proof of insurance which she retrieved from the center console of the vehicle. She also gave Mox a ticket issued by the Canton Police Department for fictitious places which she had received a few days earlier. Also present in the vehicle was John Ellis who was seated in the front passenger seat. Crook stated she lived in Sugarcreek, but had come to Coshocton to give Ellis, her ex son-in-law a ride to Wal-Mart, and also to retrieve her social security disability (SSD) deposit which went on a Wal-Mart card at midnight on the first of every month. Crook explained she needed the SSD funds before she could afford to transfer the plates on her vehicle.

{¶ 4} Deputy Wade Garrett arrived to assist Mox. Garrett ran Crook's information on his portable radio while watching Crook and Ellis. Mox retrieved Chili from his cruiser

and ran the dog around Crook's vehicle. Chili alerted on the vehicle, indicating the presence of narcotics within.

{¶ 5}   Crook and Ellis were placed in two different cruisers while Mox and Garrett searched Crook's vehicle and purse. A large Crown Royal whiskey bag was located in the center console of the vehicle. The bag contained substances later identified by the Bureau of Criminal Investigation as 26.82 grams of methamphetamine, 16.30 grams of marijuana, 2.07 grams of a fentanyl related compound. It additionally contained a digital scale and a small spoon. In Crook's purse, Mox discovered "dime bags" which are small baggies typically used to package drugs for distribution. Some of the dime bags in Crook's purse were consistent with the packaging of the drugs found in the Crown Royal bag. Also located in Crook's purse were smaller Crown Royal bags and $194 cash.

{¶ 6}   Crook was arrested that morning and posted bond on November 14, 2018. The matter was bound over to the grand jury which issued its indictment on January 25, 2019. A summons was issued and service attempted on February 6, 2019, however, Crook had moved without apprising the court of her new address. Crook was eventually served with the indictment on April 1, 2019. The indictment charged Crook with one count of trafficking in marijuana, a felony of the fifth degree, one count of aggravated trafficking in methamphetamine, a felony of the second degree, and one count of trafficking in a fentanyl related compound, a felony of the fourth degree.

{¶ 7}   Counsel for Crook requested discovery on April 29, 2019. The state responded the same day and requested reciprocal discovery. Counsel for Crook did not file reciprocal discovery until August 12, 2019.

{¶ 8} On August 12, 2019, Crook's counsel filed a motion to dismiss the indictment for violation of Crook's speedy trial rights. Counsel argued that while Crook had moved, a friend of Crook's had contacted the Coshocton County Clerk of Courts on Crook's behalf and reported her new address sometime between February 6 and February 8, 2019. On August 14, 2019, the state replied, arguing Crook's failure to keep the court apprised of her address, delaying service of summons, tolled time. The state additionally argued Crook failed to respond to the state's request for reciprocal discovery within the 14-day time frame set forth in Coshocton County Local Rule 17.4, thus tolling time until her eventual response.

{¶ 9} On August 15, 2019, the trial court denied Crook's motion citing her failure to update her address with the court and her failure to timely respond to the state's request for discovery.

{¶ 10} Crook opted to proceed to a jury trial which took place on September 24, 2019. The state presented testimony from Mox, Garrett, and a forensic scientist from the Bureau of Criminal Investigations. Crook testified on her own behalf claiming the drugs belonged to Ellis and she had no idea they were in the car. The jury returned verdicts of guilty on each count of the indictment.

{¶ 11} Crook filed an appeal and the matter is now before this court for consideration. She raises four assignments of error as follow:

I

{¶ 12} "CROOK'S SPEEDY TRIAL RIGHTS WERE VIOLATED IN CONTRAVENTION OF R.C. 1945.71 ET SEQ. AND THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

II

{¶ 13} "CROOK'S CONVICTIONS ARE BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

III

{¶ 14} "CROOK'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

IV

{¶ 15} "THE TRIAL COURT UNLAWFULLY ORDERED CROOK TO SERVE CONSECUTIVE SENTENCES, IN VIOLATION OF HER RIGHTS TO DUE PROCESS, GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITES STATES CONSTITUTION."

I

{¶ 16} In her first assignment of error, Crook argues the trial court erred in denying her motion to dismiss the indictment because her speedy trial rights were violated. We disagree.

{¶ 17} The right to a speedy public trial is established in the Ohio Constitution, Article I, Section 10. "In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the

accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process to procure the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed * * *." See, *State v. MacDonald*, 48 Ohio St.2d 66, 68, 357 N.E.2d 40, 42(1976).

{¶ 18} A speedy-trial claim involves a mixed question of law and fact. *State v. Larkin*, 5th Dist. Richland No. 2004-CA-103, 2005-Ohio-3122. As an appellate court, we must accept as true any facts found by the trial court and supported by competent, credible evidence. With regard to the legal issues, however, we apply a de novo standard of review and thus freely review the trial court's application of the law to the facts. Id. When reviewing the legal issues presented in a speedy-trial claim, we must strictly construe the relevant statutes against the state. *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706, 709 (1996).

{¶ 19} Pursuant to R.C. 2945.73, a person who is not brought to trial within the proscribed time periods found in R.C. 2945.71 and R.C. 2945.72 "shall be discharged" and further criminal proceedings based on the same conduct are barred. A defendant against whom a felony charge is pending must be brought to trial within the 270–day time limit mandated by R.C. 2945.71(C)(2).

{¶ 20} We note Crook's argument on appeal provides no actual calculation, and simply states the date of arrest and the day of trial. Crook's argument further ignores tolling factors raised below,. Specifically, Crook ignores her failure to provide the court or her attorney with her new address as well as her failure to timely respond to the state's request for reciprocal discovery.

{¶ 21} First, the failure of a criminal defendant to respond to a request for reciprocal discovery within a reasonable time constitutes neglect which tolls the running of the statutory speedy trial time. *State v. Eutsey*, 5th Dist. Stark No. 2018-CA-00045, 2020-Ohio-2756 ¶ 30 citing *State v. Palmer*, 112 Ohio St.3d 457, paragraph one of the syllabus, 860 N.E.2d 1011 (2007). See also R.C. 2945.72(E).

{¶ 22} Next, in *State v. Stokes*, 193 Ohio App.3d 549, 2011-Ohio-2104, 925 N.E.2d 1192, another case involving a defendant's failure to keep the trial court apprised of a valid address, the Twelfth District found this failure tolled time:

> Our independent review of the record shows that the delay between September 13, 2007, the date of Stokes's first appearance of record, and January 4, 2010, the date of his arrest in Florida, was caused by Stokes's failure to furnish a reliable address to authorities or otherwise maintain appropriate contact with his attorney or the court. We reach this conclusion because the facts of the case indicate that Stokes had sufficient notice of the pendency of charges against him to require, at minimum, that he continue to make himself readily available to the court and his attorney, which would include providing a reliable address. See *State v. McClaine* (Dec. 15, 1983), Cuyahoga App. No. 46969, 1983 WL 2911, at *2. In *McClaine*, the Eighth District Court of Appeals held that the days between the issuance of defendant's summons and his eventual re-arrest were not chargeable to the speedy-trial time limit when " [a]bsent evidence

that [defendant's] failure to receive [service of summons] resulted from circumstances beyond his control, defendant was obliged to accept and receive that notice at the address he supplied." *Id.* The court further held that a defendant's failure to make himself "readily available for subsequent appearances by providing a reliable address can be 'neglect or [an] improper act of the accused' which extends the speedy trial time limits, pursuant to R.C. 2945.72(D)." *Id.*

*Stokes*, supra, ¶ 14-15.

{¶ 23} With those principals in mind, we turn to calculation. R.C. 2945.71(C)(2) provides "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). When calculating speedy trial time, the day of arrest is not to be counted. *State v. Friedhof*, 9th Dist. Medina No. 2505-M, 1996 WL 385612, *3 (July 10, 1996), citing *State v. Steiner*, 71 Ohio App.3d 249, 250-251 (9th Dist.1991); see also Crim.R. 45(A).

{¶ 24} Crook was arrested on November 1, 2018 and held in custody until she made bond on November 14, 2018. Because the day of arrest does not count toward our calculation, and because Crook was held in jail, 13 x 3 = 39 days.

{¶ 25} The Coshocton County Sheriff's office attempted to serve Crook with her summons on the indictment at her last reported address on February 3, 2019. Because Crook had failed to provide the court with her new address, service was not perfected until April 1, 2019. Thus time tolled on February 3, 2019. November 15, 2018 through February 3, 2019 is 81 days. 81 + 39 = 120.

{¶ 26} Next, Crook was served on April 1, 2019. On April 29, 2019, after complying with Crook's request for discovery the state requested reciprocal discovery. Twenty-nine days had passed before the state's request. 120 + 29 = 149.

{¶ 27} Crook filed her response to the state's request for discovery on August 12, 2019 and her trial took place on September 24, 2019. August 12, 2019 through September 24, 2019 is 44 days. 149 + 44 = 193.

{¶ 28} Crook was therefore brought to trial well within 270 days. Accordingly, the first assignment of error is overruled.

## II, III

{¶ 29} We address appellant's second and third assignments of error together as they are interrelated. Crook argues her convictions are against the manifest weight and sufficiency of the evidence. We disagree.

{¶ 30} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio

App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 31} Crook argues her convictions are against the manifest weight and sufficiency of the evidence because she testified under oath that the drugs and drug paraphernalia did not belong to her, and she had no knowledge of their presence in her vehicle. She argues the drugs and paraphernalia belonged to Ellis.

{¶ 32} First, a jury is not required to believe a witness simply because the witness is under oath, and may believe all, part or none of any witness's testimony. The jury in this matter was so instructed. Transcript of trial (T.) 210.

{¶ 33} Second, Crook was not charged with possessing the drugs and paraphernalia. Rather, the indictment alleged Crook "did knowingly prepare for shipment, ship, transport, deliver, prepare for distribution or distribute a controlled substance," specifically, marijuana, a fentanyl-related compound, and methamphetamine, "when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person * * *."

{¶ 34} The state presented evidence to show Crook's purse contained empty "dime bags" which were consistent with the packaging of the two fentanyl-related compounds found in the large Crown Royal bag. T. 120-122, 186. Crook testified that Ellis must have put the drugs in the center console while the deputies were momentarily distracted. T. 175. The jury further heard Crook allege she was destitute for cash so she

could buy tags for her vehicle. T. 171-172. She testified she was on her way to Wal-Mart at 2:00 a.m. to collect her SSD payment for that purpose, yet conceded she had $190 in cash on her person. T. 183. As for the empty dime bags in her purse, Crook testified she used them to hold her medications. T. 176.

{¶ 35} There was no dispute at trial that drugs were located in Crook's car. The only matters for the jury to settle were whether Crook was aware of the presence of the drugs, and whether they were intended for sale or resale either by herself or Ellis. Given the forgoing facts, we find the state produced sufficient evidence to support convictions on each charge. We further find the jury did not lose its way in believing the state's evidence and discounting the testimony of Crook.

{¶ 36} The second and third assignments of error are overruled.

IV

{¶ 37} In her final assignment of error Crook argues the record does not support the imposition of consecutive sentences as it is disproportionate to her conduct. We disagree.

{¶ 38} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22; *State v. Howell*, 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶ 31

{¶ 39} In *State v. Gwynne*, a plurality of the Supreme Court of Ohio held that an appellate court may only review individual felony sentences under R.C. 2929.11 and R.C. 2929.12, while R.C. 2953.08(G)(2) is the exclusive means of appellate review of consecutive felony sentences. 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169 ¶16-18.

{¶ 40} R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. See, also, *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.2d 659, ¶ 28; *State v. Gwynne*, supra, ¶16.

{¶ 41} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross*, 161 Ohio St. at 477 120 N.E.2d 118.

{¶ 42} When imposing consecutive sentences, a trial court must state the required findings at the sentencing hearing. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29. Because a court speaks through its journal, the court should also incorporate its statutory findings into the sentencing entry. *Id.* However, a word-for-word recitation of the language of the statute is not required. *Id.* As long as the reviewing court can discern the trial court engaged in the correct analysis and can determine the record contains evidence to support the findings, consecutive sentences should be upheld. *Id.*

{¶ 43} Crook does not argue that the trial court failed to make the appropriate findings before imposing consecutive sentences or failed to include the same in its

sentencing judgment entry. Rather, she argues her consecutive sentences were unwarranted as they were disproportionate to her conduct. We disagree.

{¶ 44} Deputy Mox testified that the amount of methamphetamine found in Crook's vehicle was extraordinary. In fact, the most methamphetamine he had every encountered during a drug bust. T. 114. Forensic scientist Martin Lewis of the Bureau of Criminal Investigation testified the methamphetamine recovered from Crook's vehicle weighed 26.82 which is five times the bulk amount, but less than 50 times the bulk amount. In addition, two separate baggies of a fentanyl-related compound were also recovered from the vehicle the combined weight of which was 2.07 grams.

{¶ 45} During sentencing the trial court noted it had witnessed all of the evidence presented and further:

> The other problem you have is that this community has been the epicenter if not close to the epicenter of a major drug epidemic in the United States. It's as if it hit right here. And the harm caused by that has been so great that. Ms. Crook, you picked the wrong jurisdiction. The court also notes that you drove on November 1st, 2018, you drove all the way from Sugarcreek, Ohio, and in your car was located a large amount of methamphetamine, scales and baggies that could be used to distribute that methamphetamine.
>
> Let's not forget the fentanyl-related compound.
>
> * * *

You drove the product down here. You had a partner to assist you with distribution. And for somebody who was out of money – I know that the $194, the $4 was separate. That's what you had left over. That's what you had left to get through the next day. That's the Social Security disability case. The $190 appears to be money that you had already made to distribute the poison that has wreaked havoc upon this region.

T. 236-237.

{¶ 46} The trial court then proceeded to sentence Crook after which it ordered Crook to serve the sentences consecutively, finding consecutive sentences necessary to protect the public from future crime, "from the future distribution of methamphetamine and fentanyl and other illegal substances" and to punish the offender as the consecutive sentences were not disproportionate to Crook's conduct and the danger she poses to the public. T. 238.

{¶ 47} The trial court engaged in the appropriate analysis and the record contains evidence to support the trial court's findings. Additionally, the trial court included its statutory findings into the judgment entry. The final assignment of error is therefore overruled.

{¶ 48} The judgment of conviction and sentence of the Coschocton County Court of Common Pleas is affirmed.

By Wise, Earle, J.

Gwin, P.J. and

Delaney, J. concur.

EEW/rw